EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Audrey McConnell Jiménez<br><br>Recurrida<br><br>v.<br><br>José Javier Palau Grajales<br><br>Peticionario | Certiorari<br><br>2004 TSPR 69<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2002-485

Fecha: 5 de mayo de 2004

Tribunal de Circuito de Apelaciones:

       Circuito Regional IV

Juez Ponente:

       Hon. Yvonne Feliciano Acevedo

Abogados de la Parte Peticionaria:

       Lcdo. Wilson Cabán Ayala
       Lcdo. Iván Crespo Arroyo

Abogados de la Parte Recurrida:

       Lcdo. Nicolás Rivera Pérez
       Lcda. Lisandra Irizarry Otaño

Materia: Divorcio y Aumento de Pensión

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Audrey McConnell Jiménez

    Recurrida

        vs.                         CC-2002-485      CERTIORARI

José Javier Palau Grajales

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIAD SEÑOR REBOLLO LÓPEZ

En San Juan, Puerto Rico, a 5 de mayo de 2004

El peticionario, José Javier Palau Grajales, y la recurrida, Audrey Wilda McConnell Jiménez, contrajeron matrimonio el 30 de diciembre de 1994, procreando un hijo en el mismo. El 18 de agosto de 1999 las partes presentaron una petición de divorcio por consentimiento mutuo ante la Sala Superior de Aguadilla del Tribunal de Primera Instancia. La referida petición contenía estipulaciones sobre la patria potestad y custodia del menor, las relaciones paterno-filiales, la pensión alimentaria a ser satisfecha por Palau Grajales, así como la división de los bienes gananciales.

En cuanto a la patria potestad y custodia del menor se refiere, las partes estipularon que la primera sería compartida mientras la segunda la tendría la aquí recurrida señora McConnell Jiménez. Asimismo, la pensión alimentaria se estableció en $150.00 mensuales a ser tramitada la misma por conducto de la Administración para el Sustento de Menores (en adelante ASUME).

El tribunal de instancia emitió resolución, fechada 1 de octubre de 1999, donde decretó el divorcio, adoptando las estipulaciones que presentaron las partes en su petición de divorcio. Al decretarse el divorcio el menor tenía tres (3) años de edad. Cabe señalar que, al momento del divorcio, no existía una propiedad ganancial que la aquí recurrida pudiese reclamar como hogar seguro. Es por ello que, luego de decretado el divorcio, McConnell Jiménez residió por un período de tiempo en una casa alquilada junto a su hijo.[1]

Así las cosas, el 6 de marzo de 2000 la señora McConnell Jiménez solicitó un aumento de pensión alimentaria arguyendo que su situación económica había cambiado luego de decretado el divorcio. Indicó que sus gastos de transportación habían aumentado por razón de un traslado en su trabajo y, además, que durante los últimos ocho (8) meses ella era, realmente, la que sufragaba los

---

[1] La peticionaria tenía otra hija producto de una relación sentimental anterior, quien al momento del divorcio contaba con diez (10) años de edad y, también, vivía con ella.

gastos de cuido del menor, sus alimentos, así como su plan médico.

A los fines de discutir la referida solicitud, la Examinadora de Pensiones citó a una vista. Ello no obstante, la referida Examinadora emitió un informe especial, fechado 15 de mayo de 2000, donde señaló que la vista pautada resultaba innecesaria toda vez que, luego de entrevistadas las partes, había determinado que no había ocurrido un cambio sustancial meritorio de un aumento de pensión como tampoco habían transcurrido los tres (3) años dispuestos en la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 501, *et seq*. En consecuencia, recomendó el archivo del incidente de aumento de pensión. El mencionado informe fue acogido, y adoptado, por el tribunal de instancia mediante resolución de 17 de mayo de 2000.

La aquí recurrida presentó una moción de reconsideración ante el foro primario. En la misma argumentó que sí existían cambios sustanciales, consistentes los mismos en el pago de un cuido para el menor, entre otros, y, además, que Palau Grajales contaba con ingresos suficientes para proveer una pensión alimentaria más alta que la antes estipulada.

A los efectos de resolver la reconsideración solicitada, el foro sentenciador celebró una vista, luego de la cual dejó sin efecto el informe especial antes radicado por la examinadora de pensiones y le ordenó a

ésta fijar una pensión conforme a la Ley. De la minuta correspondiente a dicha vista surge que el juez sentenciador entendió que el acuerdo de pensión alimentaria al que llegaron las partes al divorciarse era demasiado bajo y, además, que ello contravenía la norma jurisprudencial de que este tipo de acuerdo debía cumplir con las guías mandatorias a las que hace referencia la Ley para el Sustento de Menores. Esto es, en vista de que al estipular la pensión aquí en cuestión no se siguieron las guías, ni tampoco se presentaron las planillas de información personal y económica, el tribunal de instancia entendió que debía dejar sin efecto la misma y ordenar que se fijara una nueva.

Palau Grajales solicitó reconsideración. Argumentó que ya había una pensión válida fijada de acuerdo a las estipulaciones acordadas por las partes al momento del divorcio y que lo que procedía en derecho era una vista de modificación de pensión, a los fines de dirimir si efectivamente había ocurrido un cambio sustancial en las circunstancias. La aquí recurrida se opuso a dicha reconsideración. Luego de varios trámites procesales, el tribunal de instancia emitió una orden, fechada 2 de octubre de 2000, mediante la cual --reconsiderando su previo dictamen-- remitió el asunto a la Examinadora de Pensiones para "revisión" de pensión.

Así las cosas, la Examinadora de Pensiones celebró la vista de revisión ordenada.[2] Luego de celebrada la misma, la Examinadora emitió un "Informe, Determinaciones de Hechos, Derecho y Recomendaciones", fechado 5 de abril de 2001, donde consignó que efectivamente había ocurrido un cambio sustancial en las circunstancias, ello en vista de que la aquí recurrida, señora McConnell Jiménez, había adquirido una residencia cuya hipoteca ascendía a $883.72 mensuales. Dicha adquisición ocurrió el 18 de agosto de 2000, es decir, transcurrido casi un año de decretado el divorcio. Del expediente de autos surge que la aquí recurrida adquirió este inmueble en vista de que sus hijos no tenían un lugar estable donde residir.

Como parte de su informe, la Examinadora hizo constar que la pensión alimentaria, resultante de la aplicación de las guías mandatorias, ascendía a $819.00 mensuales. Ello no obstante, ésta recomendó que no se utilizaran las guías mandatorias para establecer la pensión del aquí peticionario, toda vez que McConnell Jiménez alegadamente había solicitado una suma menor. Por esta razón, recomendó que se aumentara la pensión a lo supuestamente solicitado por la aquí recurrida, esto es, $400.00 mensuales.[3]

---

[2] De los autos del caso surge que, durante la referida vista, al peticionario no se le permitió re-contrainterrogar a la aquí recurrida.

[3] Como veremos más adelante, de los autos del caso no surge que la aquí peticionaria McConnell Jiménez haya solicitado una pensión alimentaria de $400.00 mensuales cuando
(Continúa . . .)

El tribunal de instancia acogió el referido informe, adoptando por referencia las determinaciones de hecho y derecho incluidos en el mismo, declarando con lugar la solicitud de aumento de pensión radicada por la señora McConnell Jiménez, y ordenando a Palau Grajales a pagar la suma de $400.00 mensuales.

McConnell Jiménez solicitó reconsideración. En síntesis, argumentó que lo que procedía en derecho era que se le concediera la pensión alimentaria resultante de la aplicación de las guías mandatorias. Añadió, además, que ella nunca había solicitado una pensión de $400.00 mensuales sino que se había limitado a requerir aquella pensión que estuviera acorde con la Ley. El peticionario Palau Grajales se opuso a dicha reconsideración.

El 8 de noviembre de 2001, el tribunal de instancia declaró "ha lugar" la moción de reconsideración radicada por McConnell Jiménez[4]; concluyó que la pensión resultante de la aplicación de las guías mandatorias se presumía justa y adecuada, ausente evidencia que controvierta dicha presunción. Asimismo, el mencionado foro entendió que

solicitó un aumento de pensión. Al contrario, surge con claridad que la peticionaria solicitó que se le concediera lo que procedía de acuerdo a la Ley.

[4] Resulta pertinente aclarar que esta reconsideración fue únicamente a los efectos de aumentar la cuantía de la pensión alimentaria para que fuera acorde con la guías mandatorias a las que hace referencia la Ley para el Sustento de Menores, ante. Es decir, el tribunal de instancia no alteró su dictamen en cuanto a que habían ocurrido cambios sustanciales en las circunstancias de la aquí recurrida McConnell Jiménez.

Palau Grajales <u>no</u> había logrado rebatir la referida presunción, aun considerando los argumentos esbozados en su oposición a la reconsideración radicada por McConnell Jiménez. Añadió, además, que el tribunal había <u>errado</u> al entender que McConnell Jiménez solicitó una cantidad de $400.00 mensuales en concepto de pensión alimentaria para el menor toda vez que ésta solicitó lo que procediera de acuerdo a la Ley. Finalmente, estableció la pensión resultante de la aplicación de las guías mandatorias, esto es $819.00 mensuales. Palau Grajales solicitó reconsideración de esta última resolución, la cual fue declarada "no ha lugar".

Inconforme con este proceder, el peticionario acudió --vía *certiorari*-- ante el Tribunal de Apelaciones el 13 de diciembre de 2001. Argumentó que la deuda hipotecaria adquirida por la peticionaria no debía considerarse como que constituyó un cambio sustancial. Ello debido a que la misma fue hecha de mala fe y, además, que fue adquirida sin consultarle a éste, lo cual resultaba violatorio de su estipulación sobre patria potestad compartida. Sostuvo, además, que el tribunal de instancia había errado al ordenar una nueva vista de aumento de pensión, toda vez que ya se había realizado una anteriormente donde se concluyó que no existían cambios sustanciales que ameritaran el aumento de pensión. Finalmente, argumentó que el tribunal de instancia erró al imponerle la pensión de $819.00 mensuales en lugar de la de $400.00 mensuales y

al no exigir a la Examinadora de Pensiones que le permitiese re-contrainterrogar a la peticionaria.

El Tribunal de Apelaciones denegó el recurso indicando que en ausencia de pasión, prejuicio, parcialidad, o error manifiesto no habría de intervenir con la apreciación de la prueba que realizó el tribunal de instancia. El foro apelativo intermedio específicamente concluyó que:

> Un análisis de la prueba presentada ante el foro de instancia revela que, a la luz de nuestro estado de derecho vigente, no surge nada que nos mueva a concluir que la aplicación de las Guías al caso de autos tuvo como resultado una pensión injusta e irrazonable. Lejos de ello, el análisis que realizara el tribunal apelado encuentra base no sólo en las necesidades del menor sino también en los recursos del alimentante. El hecho de que la resolución del tribunal no resulta favorable al señor Palau, esto no constituye un error. El señor Palau no logró rebatir la corrección de la aplicación de las guías mandatorias por lo que este Tribunal entiende que las mismas son de aplicación al presente caso.

Insatisfecho con este proceder el peticionario acudió ante este Tribunal --vía *certiorari*-- imputándole al foro apelativo intermedio haber errado:

> ... al no resolver ... que el Tribunal de Instancia no [sic] debía tomar en consideración las deudas adquiridas de la casa, cuando éstas fueron hechas de mala fe....

> ... al no resolver nuestro argumento de que erró el Tribunal de Instancia al haber aceptado como cambios sustanciales la compra de la residencia...cuando éstas fueron hechas sin haber notificado antes a nuestro cliente, quien tiene patria potestad....

> ... al resolver que de acuerdo a la prueba presentada, de las necesidades de la apelada y

los recursos del apelado, procede la modificación y que no han de intervenir en la apreciación de la prueba....

... al resolver que fue válida la determinación ... de fijar una pensión en $819.00 y no en $400.00 según había sido solicitado por la propia parte peticionaria.

... al resolver que fue válida la determinación ... de no ordenarle a la examinadora que nos permitiese re-contrainterrogar a la peticionaria, a pesar de haberlo solicitado.

... al resolver que fue válida la determinación ... de no señalar una vista de rebaja de pensión....

<u>Expedimos</u> el recurso. Contando con la comparecencia de las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

I

En sus dos primeros señalamientos de error el peticionario sostiene que el tribunal de instancia y el tribunal apelativo erraron al considerar, como un cambio sustancial, la compra de una residencia por McConnell Jiménez. <u>Señala dos razones en apoyo de dicho planteamiento, a saber</u>: i.) que esta deuda fue adquirida de mala fe y ii.) que antes de adquirir la referida propiedad la recurrida venía obligada a consultarle a éste sobre dicha compra, ello en vista de que ambos tenían la patria potestad del hijo habido durante el matrimonio. Veamos.

Como es sabido, la obligación de los progenitores de brindar alimentos a los menores de edad es parte esencial del derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II sec. 7; Martínez Vázquez v. Rodríguez Laureano, res. en 13 de agosto de 2003, 2002 TSPR 134. Por esta razón, hemos resuelto que los casos de alimentos de menores están revestidos del más alto interés público. López v. Rodríguez, 121 D.P.R. 23, 28 (1988). La obligación de brindar alimentos a los menores de edad surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidos. Chévere v. Levis I, res. el 15 de marzo de 2000, 2000 TSPR 42; Ivette Maldonado v. Cruz Dávila, res. el 8 de enero de 2004, 2004 TSPR 1. Dicho deber emana, además, de los Artículos 118, 143 y 153 del Código Civil de Puerto Rico.[5] La referida obligación cubre todo lo que es indispensable al sustento del menor, su habitación, vestido y asistencia médica, entre otros.[6]

Por otro lado, en vista de que este derecho a recibir alimentos es del más alto interés público, el Estado ha legislado ampliamente para velar por su cumplimiento. En tal virtud fue que se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley

---

[5] 31 L.P.R.A. secs. 466, 562 y 601, respectivamente.

[6] Artículo 142 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 561.

Núm.86 de 17 de agosto de 1994,[7] titulada como "La Ley Orgánica de la Administración para el Sustento de Menores", 8 L.P.R.A. sec. 501, *et seq.* (en adelante Ley para el Sustento de Menores). Esta pieza legislativa establece la política pública del Estado de crear un procedimiento judicial expedito[8] que permita procurar de los padres, o personas legalmente responsables, que contribuyan a la manutención y bienestar de sus hijos o dependientes mediante la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de pensiones alimentarias. Véase: 8 L.P.R.A. sec. 502.

El derecho de alimentos que tienen los hijos respecto a sus padres no cesa ni se extingue con el divorcio de éstos.[9] Cónsono con lo anterior, al reconocer el divorcio

---

[7] La Ley Núm. 5 de 30 de diciembre de 1986 aprobó por primera vez la legislación conocida como la Ley Especial de Sustento de Menores. Aunque la Ley Núm. 86, ante, no tuvo el efecto de derogarla, sí la enmendó en forma sustancial y, además, cambió su Sección 1 para darle un nuevo título. Véase: Sarah Torres Peralta, La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico, San Juan, Publicaciones S.T.P., Inc., 1997, pag. 4.

[8] Dicho trámite es uno de carácter sumario que comienza con la radicación de la reclamación alimentaria. La secretaría se encarga de señalar la vista y expedir la notificación-citación. Luego de ciertos trámites procesales, se celebra una vista ante el Examinador, quien radica su informe al juez que finalmente provee sobre las recomendaciones recibidas. Sarah Torres Peralta, La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico, San Juan, Publicaciones S.T.P ., Inc., 1997, sec. 4.36-4.37; 8 L.P.R.A. secs. 511 y 514.

[9] Artículo 108 del Código Civil, 31 L.P.R.A. sec. 384.

por consentimiento mutuo como parte del derecho constitucional a la intimidad, este Tribunal en _Figueroa Ferrer v. E.L.A._, 107 D.P.R. 250, 276-277 (1978), según interpretado en _Negrón Rivera y Bonilla, Ex Parte_, 120 D.P.R. 61 (1987), resolvió que no se aceptarían peticiones bajo dicha causal a menos que las partes acompañen dicha solicitud, en lo pertienente, con una estipulación sobre _sustento_ de los hijos menores o dependientes.

Es correcto que constituye doctrina reiterada de este Tribunal que las estipulaciones que finalizan un pleito, suscritas por las partes, y aceptadas por el tribunal, constituyen un contrato de transacción. _Magee v. Alberro_, 126 D.P.R. 228, 232 (1990); _Negrón Rivera y Bonilla, Ex Parte_, ante. Como norma general, el juez que preside aceptará los convenios a los que las partes lleguen y ello tendrá el efecto de cosa juzgada. _Magee v. Alberro_, ante, a las págs. 232-233.

Ello no obstante, no es menos cierto que hemos resuelto que, _en los casos de divorcio por consentimiento mutuo_, una estipulación presentada ante el tribunal _no_ queda al exclusivo arbitrio de las partes. El tribunal tiene el _deber_ de velar por que la misma confiera protección a éstas. Debe mantenerse presente que en _Figueroa Ferrer v. E.L.A._, ante, a la pág. 276, este Tribunal señaló que "[e]l Estado puede y debe cerciorarse de que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial no es producto de la

irreflexión o de la coacción." Lo anterior cobra aún más importancia cuando la estipulación en cuestión es sobre las pensiones alimentarias de los menores habidos en el matrimonio, en relación con las cuales el juez debe asegurarse que lo acordado es beneficioso a los menores. Negrón Rivera y Bonilla, Ex Parte, ante, a la pág. 76.

Por otro lado, no debe perderse de vista que reiteradamente hemos resuelto que las sentencias de alimentos no constituyen cosa juzgada y que siempre estarán sujetas a revisión. Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246 (1988). Véase, además: Magee v. Alberro, ante, a la pág. 233. De igual forma, reiteradamente hemos sostenido que, una vez la pensión alimentaria ha sido estipulada por las partes, la alteración del referido convenio, antes de transcurridos los tres (3) años, procederá únicamente cuando exista un cambio sustancial en las circunstancias que dieron lugar o que originaron el mismo. Véase: Negrón Rivera y Bonilla, Ex Parte, ante, a la pág. 77.

En ocasión de definir qué es un cambio sustancial en las circunstancias, hemos sostenido que es aquél que afecta la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas. Negrón Rivera y Bonilla, Ex Parte, ante, a la pág. 78. Dicho de otra forma, es el tipo de cambio que ocurre en las necesidades del alimentista y/o en los recursos del alimentante. Piñero Crespo v. Gordillo Gil, ante, a la

pág. 258. En España se ha definido como aquél que sea sustancial "en relación con el estado anterior de fortuna de los cónyuges." Véase: R. García Varela, *et al.,* La ley de divorcio: experiencias de su aplicación, Madrid, Ed. Colex, 1982, pág. 98.

De igual forma, la Ley para el Sustento de Menores, ante, consagra la doctrina de los cambios sustanciales en las circunstancias del alimentante o alimentista como requisito previo a la radicación y tramitación de una solicitud de modificación de una pensión alimentaria vigente, cuando no han transcurrido los tres (3) años dispuestos por Ley. Sarah Torres Peralta, La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico, Edición Especial, San Juan, Puerto Rico, 1997, Publicaciones STP, a la sec. 2.43. Véase además: Lcda. Ixa López Paláu, La Pensión Alimentaria de los Hijos de Puerto Rico, Guía para el Público General, Primera Edición, Puerto Rico, 1998, Ediciones Lego, págs. 88-92.

La referida Ley, en su Artículo 19, establece la facultad revisora del Examinador de toda orden de pensión alimentaria cada tres (3) años. Véase: 8 L.P.R.A. sec. 518. La mencionada disposición estatutaria, por otro lado, dispone para la revisión de las pensiones alimentarias en cualquier momento y fuera del ciclo de los tres (3) años antes mencionados. En tal virtud, dicho Artículo establece, en lo aquí pertinente, que:

> El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para revisar o modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias. 8 L.P.R.A. sec. 518.

Un análisis de la antes mencionada disposición estatutaria revela las circunstancias que pueden constituir cambios sustanciales, esto es, que pueden llevar a la modificación de un decreto alimentario antes de que transcurran los tres (3) años. En resumen, éstas son: i.) cuando están presentes cambios significativos o imprevistos en las circunstancias de cualquiera de las partes; ii.) cuando se desconocía información, por causas no imputables a la parte perjudicada por el decreto; iii.) cuando la aplicación de las guías mandatorias resulta en una cantidad diferente a la pensión corriente decretada en la orden o sentencia objeto de solicitud de modificación o iv.) cuando existe una situación de salud de un alimentista menor o incapacitado. En resumen, estas son las "circunstancias" que, de ordinario, autorizan a un Examinador a entender en una solicitud de modificación de pensión alimentaria antes de que transcurran tres (3) años de su vigencia. 8 L.P.R.A. sec. 518. Véase además: Sarah

Torres Peralta, La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico, ante, sec. 4.35.

Ahora bien, en los casos de fijación de pensiones alimentarias el peso de la prueba para establecer la procedencia y la cuantía de una pensión alimentaria le corresponde al alimentista. Lo anterior es cónsono con el principio elemental de evidencia consagrado en la Regla 10 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10, a los efectos de que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes." Véase, además: Sarah Torres Peralta, La Ley Especial para el Sustento de Menores, ante, a la sec. 2.43-2.44.

Dicho de otra forma, para que proceda declarar con lugar una solicitud de modificación de pensión, cuando aún no han transcurridos los tres (3) años dispuestos en la Ley Para el Sustento de Menores, la situación evidenciaria dependerá de si se trata de una solicitud de aumento o de una solicitud de reducción. En el primer caso, el peso de la prueba recae sobre el reclamante del aumento, quien debe demostrar que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al fijarse la pensión. En el segundo caso, el peso de la prueba recae sobre el que solicita la rebaja. Regla 10 de las de Evidencia, ante. Sarah Torres Peralta, La Ley Especial de Sustento de Menores, ante, a la sec. 2.43-2.44. Véase

además:  López  v.  Rodríguez,  ante;  Negrón  Rivera  v. Bonilla, Ex Parte, ante.

Con este trasfondo doctrinal en mente, analizamos la situación ante nos.

II

De entrada, recordemos que es doctrina reiterada que los tribunales apelativos no deben intervenir con la apreciación de la prueba que realizan los tribunales de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad, Trinidad García v. Chade, res. el 18 de enero de 2001, 2001 TSPR 7; Argüello López v. Argüello García, res. el 31 de agosto de 2001, 2001 TSPR 124. Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia. Véase: Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986); Ortiz v. Cruz Pabón, 103 D.P.R. 939, 946-947 (1975).

En el caso ante nos, la recurrida McConnell Jiménez solicitó un aumento de pensión alegando un cambio sustancial en su situación y en las necesidades del menor, la cual fue denegada inicialmente. Ello no obstante, más adelante el foro primario entendió prudente ordenar una segunda vista para dirimir si habían ocurrido los cambios sustanciales requeridos.[10] Luego de realizada esta vista,

---

[10] Precisa recordar que el tribunal, a solicitud de parte o a su discreción, puede iniciar el procedimiento para revisar o modificar una orden de pensión alimentaria en

(Continúa . . .)

la Examinadora rindió un informe --<u>fundamentado el mismo en la prueba presentada y en la credibilidad que le merecieron los testigos</u>-- en el cual concluyó que procedía el aumento solicitado, ello en vista de que efectivamente había ocurrido un cambio sustancial en las circunstancias. El cambio sustancial más significativo que encontró la Examinadora lo fue que la recurrida había adquirido una residencia debido a que el menor no tenía un hogar estable donde residir antes de dicha adquisición.

A tenor con lo dispuesto en el Artículo 18 de la Ley Para el Sustento de Menores, ante,[11] el foro de instancia hizo suyas las referidas determinaciones, conclusiones y recomendaciones de la Examinadora. De esta forma, declaró "ha lugar" la solicitud de aumento de pensión y ordenó al peticionario Palau Grajales a pagar la suma de $400.00 mensuales; todo esto efectivo al mes de agosto de 2000, fecha en que "ocurrió el cambio sustancial cuando la

---

cualquier momento y fuera del ciclo de los tres (3) años. 8 L.P.R.A. sec. 518.

[11] Dicho artículo dispone, en lo aquí pertinente, lo siguiente:

> 5.) El informe de un Examinador incluirá determinaciones de hechos, conclusiones de derecho y recomendaciones sobre la pensión alimenticia, el cual será referido al Tribunal de Primera Instancia. El juez del Tribunal de Primera Instancia podrá hacer suyas las determinaciones, conclusiones y recomendaciones del Examinador o hacer sus propias determinaciones de hecho o conclusiones de derecho con o sin vista previa y emitir la orden, resolución o sentencia que corresponda...."

promovente compró la residencia en la que reside el menor".

El peticionario Palau Grajales no sostiene que la adquisición de una casa no sea, de su faz, un cambio sustancial; lo que el peticionario alega es que dicha adquisición se hizo de mala fe, lo que debió impedir que el tribunal de instancia lo considerara como cambio sustancial.[12] El peticionario parece olvidar que la buena fe siempre se presume y que el peso de la prueba le corresponde al que afirma la mala fe. Vázquez Santiago v. Registrador, 137 D.P.R. 384 (1994); Cervecería Corona v. Commonwealth, Ins. Co., 115 D.P.R. 345, 351 (1984).

La recurrida cumplió con el *quantum* de prueba requerido a los efectos de establecer que efectivamente ocurrió un cambio sustancial en las circunstancias y que, por lo tanto, procedía un aumento de pensión. El peticionario falló en no rebatir esa prueba. Si éste entendía que la adquisición de la propiedad en cuestión ocurrió de mala fe, el peticionario estaba obligado a probarlo. Ello no ocurrió.

---

[12] Nuestro sistema de derecho es uno rogado. Véase: S.L.G. v. Srio. de Justicia, res. el 26 de septiembre de 2000, 2000 TSPR 138; Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., 135 D.P.R. 303 (1994). No emitimos criterio, en consecuencia, sobre si la adquisición de una casa constituye o no, de por sí, un "cambio sustancial", lo cual conllevaría pasar juicio, entre otros, sobre la razonabilidad del precio de la propiedad adquirida. Nos limitamos a resolver los asuntos planteados conforme los hechos particulares del caso y las alegaciones de las partes.

Por otro lado, un análisis de los autos del caso nos lleva a concluir que la adquisición de la residencia aquí en cuestión no es el único aspecto que demuestra el cambio sustancial requerido para este tipo de aumento de pensión. Como señaláramos en el acápite anterior, dicho requisito se entiende cumplido si de la aplicación de las guías mandatorias resulta una pensión diferente a la decretada. A esos efectos, el Artículo 19 de la Ley Para el Sustento de Menores, ante, dispone, en lo aquí pertinente, que:

> No obstante, cualquier ley o disposición en contrario, el requisito de cambio significativo o imprevisto en las circunstancias de alguna de las partes se cumple si la aplicación de las Guías Mandatorias para Fijar y Modificar Pensiones Alimenticias en Puerto Rico adoptadas según se dispone en este capítulo, resulta en una cantidad diferente a la pensión corriente actualmente ordenada. 8 L.P.R.A. sec. 518.

En el caso ante nos la aplicación de las guías mandatorias efectivamente resultan en una pensión alimentaria diferente a la pensión ordenada por el foro primario. Recordemos que la pensión originalmente decretada fue de apenas de unos $150.00 mensuales cuando las guías mandatorias resultaban claramente en una pensión de $819.00 mensuales.

Resolvemos que la recurrida cumplió con su deber de probar el cambio sustancial necesario para que el tribunal o el Examinador pudieran modificar la pensión alimentaria antes de transcurridos los tres (3) años dispuestos por Ley. Tanto la prueba desfilada y acogida como cierta en el

informe de la Examinadora --aceptado como suyo por el tribunal-- como el hecho de que las guías mandatorias establecen una cantidad mayor a la pensión ordenada, apoyan esta conclusión. No erró el foro apelativo intermedio al resolver que, a falta de pasión, prejuicio, error manifiesto o parcialidad, no intervendría con la apreciación de la prueba que hizo el foro de instancia.

En cuanto a este punto, por último, Palau Grajales argumenta que debido a que comparte la patria potestad de sus hijos con la recurrida, él tenía derecho a que se le consultara sobre la adquisición de la propiedad aquí en cuestión. Aparte del hecho de que, como hemos visto, la adquisición de dicha propiedad no es la única base para sostener el cambio sustancial requerido, un análisis minucioso de las disposiciones de nuestro Código Civil sobre patria potestad[13] no sostiene ni brinda apoyo a la posición del peticionario. Dichas disposiciones regulan la administración de los bienes de los hijos, más no se pauta nada sobre la adquisición de bienes por el padre o madre custodio. Es por ello que resolvemos que este argumento resulta inmeritorio.

III

Lo anteriormente señalado no resuelve, por completo, las controversias planteadas en este recurso. Nos resta

---

[13] Véanse: Artículos 152 a 166C, 31 L.P.R.A. secs. 591-634c del Código Civil.

dirimir si fue válida la determinación del Tribunal de Primera Instancia de fijar una pensión de $819.00 mensuales cuando lo que, <u>alegadamente</u>, solicitó la recurrida fue una pensión de $400.00 mensuales. Veamos.

De un análisis detallado y atemperado de las disposiciones contenidas en la Ley para el Sustento de Menores, ante, <u>se colige que existe una clara política pública de que las pensiones alimentarias se adjudiquen conforme a las guías mandatorias.</u>[14] Aun cuando la referida Ley dispone para que las partes lleguen a acuerdos y estipulaciones sobre la pensión alimentaria, <u>se establece que tanto el Examinador como el tribunal deben asegurarse que dichas estipulaciones sean cónsonas con las guías mandatorias</u>. Véase: 8 L.P.R.A. secs. 507, 510 (b)(2), (5) y 513; Sarah Torres Peralta, <u>La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico</u>, ante, a la sec. 9.7.

A esos efectos, el Artículo 19 de la Ley para el Sustento de Menores, ante, específicamente establece que:

> En todo caso en que se solicite la fijación o modificación, que se logre un acuerdo o estipulación de una pensión alimentaria, <u>será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma</u>

---

[14] Las guías a las que se refiere la Ley para el Sustento de Menores, ante, son las "Guías para Determinar y Modificar Pensiones Alimenticias en Puerto Rico". Las mismas fueron adoptadas mediante Reglamento 4070 del antes Departamento de Servicios Sociales de Puerto Rico (transferido al Departamento de la Familia por el Plan de Reorganización del 28 de julio de 1995) el 8 de diciembre de 1989.

utilizando para ello las guías adoptadas a tenor con lo dispuesto en este capítulo. 8 L.P.R.A. sec. 518.

Ahora bien, la referida política pública de utilizar las guías mandatorias al momento de fijar, modificar, o acordar una pensión alimentaria no significa que la pensión resultante se deba adjudicar en forma automática y mandatoria, sin más. A esos efectos, el citado Artículo 19 expone que:

Se presumirá que la pensión alimentaria resultante de la aplicación de las guías es justa, adecuada, y en el mejor interés del menor. Dicha presunción podrá ser controvertida por cualesquiera de las partes utilizando los criterios establecidos por el Estado Libre Asociado de Puerto Rico. Si a base de la evidencia presentada para rebatir la presunción, el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores:
1.) Los recursos económicos de los padres y del menor;
2.) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;
3.) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;
4.) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y
5.) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.

También hará constar cuál hubiera sido el monto de la pensión resultante al aplicar las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico adoptadas, según dispone este capítulo. 8 L.P.R.A. sec. 518.

Dicho de otra forma, aun cuando la Ley para el Sustento de Menores, ante, impone el uso de las guías mandatorias para determinar la pensión alimentaria correspondiente y, además, crea una presunción de corrección de dicha pensión, no es menos cierto que la referida presunción es una controvertible y, por lo tanto, se permite prueba a los fines de rebatir la misma. En relación a este tema, la Regla 14 de las de Evidencia, 32 L.P.R.A. Ap. IV, R.14, dispone:

> En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo a la determinación de la no existencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido.

En el caso ante nos el tribunal de instancia --amparándose en lo dispuesto en el Artículo 18 de la citada Ley, 8 L.P.R.A. sec. 517-- acogió como suyo el informe preparado por la Examinadora de Pensiones. De esta forma declaró "con lugar" la solicitud de aumento de pensión y adjudicó la cantidad supuestamente solicitada por McConnell Jiménez de $400.00 mensuales, haciendo caso omiso del hecho de que la aplicación de las guías mandatorias resultaban en una pensión de $819.00 mensuales. En ese momento el foro primario actuó

incorrectamente ya que lo procedente en derecho era hacer un análisis de la prueba presentada por las partes para así establecer si se había rebatido la presunción de corrección de la cual goza la pensión resultante de las guías mandatorias. Dicho de otra forma, si de la evidencia presentada surgía que la pensión alimentaria resultante de la aplicación de las guías era injusta o inadecuada, así debió haberlo hecho constar el juez sentenciador en su resolución y, además, indicar a base de qué información estaba determinando una pensión diferente. Ello no se hizo. 8 L.P.R.A. sec. 518; Véase, además: Sarah Torres Peralta, La Ley Especial para el Sustento de Menores, ante, a la secs. 9.6-9.7.

Ahora bien, solicitada la reconsideración de dicha actuación, el tribunal de instancia correctamente reconsideró su errónea actuación. Concluyó, acertadatamente, que la pensión resultante de las guías mandatorias goza de una presunción de que la misma es justa, adecuada y en el mejor interés del menor. Dicho foro indicó, además, que el peticionario tenía derecho a controvertir la referida presunción. Ello no obstante, el tribunal de instancia entendió que ninguno de los argumentos esbozados por el aquí peticionario rebatían la presunción y que, por lo tanto, la única opción que tenía era adjudicar la pensión alimentaria resultante de la aplicación de las guías mandatorias. Aclaró, también, que la aquí recurrida nunca solicitó $400.00 mensuales, sino

que se limitó a solicitar la pensión alimentaria que procedía de acuerdo a la Ley. A esos efectos, el tribunal de instancia concluyó lo siguiente:

> A poco que examináramos los autos del caso, advertimos que la peticionaria solicitó un aumento a base de las guías y no de una cantidad específica (véase al efecto moción por propio derecho del 6 de marzo de 2000). Como existe la presunción de que las guías son correctas, procede por tanto se decrete el aumento de $819.00 sin perjuicio de que al peticionario le asiste el derecho de controvertir la mencionada presunción y poner en posición al tribunal de resolver lo contrario pues hasta ahora no lo ha hecho; o en la alternativa solicitar la correspondiente rebaja de ser así necesario. Aclaramos que aunque tardíamente, el promovido radicó oposición a la reconsideración el 16 de mayo de 2001. Sin embargo, los fundamentos esbozados en la misma no nos persuaden.

En el caso ante nos el aquí peticionario, Palau Grajales, tuvo una oportunidad formal de presentar evidencia a los fines de rebatir la presunción de corrección de la pensión alimentaria resultante de las guías mandatorias. No lo hizo. El foro primario, en consecuencia, venía en la obligación de determinar que la pensión resultante de la aplicación de las guías era una justa y adecuada. Dicho proceder fue conforme a la Ley.

IV

El peticionario argumenta que el foro primario erró al resolver que no incurrió en error la Examinadora de Pensiones al, alegadamente, no permitirle re-contrainterrogar a la aquí recurrida, ello en violación a

su debido proceso de ley.  No le asiste la razón. Veamos por qué.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley con el fin de proteger los derechos fundamentales de las personas, de acuerdo a los preceptos constitucionales aplicables. Mediante este análisis, el Estado, al legislar o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que cualquier intromisión con los intereses de libertad y propiedad del individuo se haga mediante un procedimiento justo y equitativo. López Vives v. Policia de Puerto Rico, 118 D.P.R. 219 (1987).

Ahora bien, la protección que ofrece este derecho, en su vertiente procesal, entra en vigor cuando está en juego un interés individual de libertad o propiedad. Board of Regents v. Roth, 408 U.S. 564 (1972); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (187). Una vez cumplida esta exigencia, es que se determina cuál es el procedimiento a seguir. Rivera Santiago v. Srio. de Hacienda, ante, a la pág. 274; Morrissey v. Brewer, 408 U.S. 471, 481 (1972). De esta forma, diversas situaciones

pueden requerir diferentes tipos de procedimientos, <u>pero</u> <u>siempre persiste el requisito general de que el proceso</u> <u>gubernamental debe ser justo e imparcial</u>. Véase: <u>Rivera</u> <u>Santiago v. Srio. de Hacienda</u>, ante, a la pág. 274; 2 <u>Treatise on Constitutional Law: Substance and Procedure</u>, Sec. 17.8, pág. 259 (1986). En <u>Rivera Rodríguez v. Lee</u> <u>Swell, etc.</u>, 133 D.P.R. 881, 888-889 (1993), establecimos diversos requisitos que debe cumplir todo procedimiento adversativo para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) <u>derecho a contrainterrogar testigos</u> y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord.

El Artículo 18 de la Ley para el Sustento de Menores, ante, dispone que "[l]as Reglas de Evidencia, Ap. IV del Título 32, se aplicarán a los procedimientos ante el Examinador." Por su parte, la Regla 43 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 43, <u>establece el orden y</u> <u>modo de interrogatorio de testigos y presentación de la</u> <u>evidencia</u>. En su inciso 4, <u>dicha Regla define lo que es el</u> <u>re-contrainterrogatorio de la siguiente forma</u>: "interrogatorio de un testigo que, con posterioridad al interrogatorio re-directo de dicho testigo, le hace la parte que le sometió al contrainterrogatorio."

En su Inciso B la referida Regla 43 dispone que "[<u>c</u>]omo <u>regla general</u>, el interrogatorio de un testigo se

llevará de acuerdo a las siguientes etapas: interrogatorio directo, contrainterrogatorio, interrogatorio re-directo y re-contrainterrogatorio." (énfasis suplido). Ahora bien el Inciso C de la Regla 43, ante, establece que:

> El juez que preside un juicio o vista tendrá control y amplia discreción sobre el modo en que la evidencia es presentada y los testigos son interrogados con miras a que la evidencia sea presentada en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando dilaciones innecesarias. (énfasis suplido.)

De todo lo anteriormente expuesto, correctamente se infiere que el contrainterrogatorio es corolario del debido proceso de ley procesal. Ello no obstante, el re-contrainterrogatorio ha sido interpretado como que no goza de la misma importancia y que, por lo tanto, es discrecional, siempre y cuando no surja información nueva en el re-directo de la cual no se tuvo oportunidad de contrainterrogar. Edward W. Cleary, et als., Mc Cormick on Evidence, Third Edition, West Publishing Company, 1984, a la pág. 71; John Henry Wigmore, Evidence in Trials at Common Law, Little Brown and Company, 1976, Volumen 6, a la págs. 740-74, sec. 1897. Véase, además: U.S. v. Kenrick, 221 F. 3d 19 (1er Cir., 2000); U.S. v. Riggi, 951 F. 2d 1368 (3er Cir., 1991); U.S. v. Morris, 485 F. 2d 1385 (5to Cir., 1973).

En vista a los hechos específicos del caso hoy ante nuestra consideración, somos del criterio que no erró el tribunal de instancia al resolver que la Examinadora de

Pensiones no incurrió en abuso de discreción al no permitir que el peticionario re-contrainterrogara a la aquí recurrida durante la vista de aumento de pensión. El peticionario no ha demostrado haber sufrido perjuicio como consecuencia de la acción de la Examinadora; ello debido a que éste no ha demostrado que, durante el re-directo, haya surgido información o evidencia nueva, en relación con la cual no tuvo oportunidad de contrainterrogar.

V

Finalmente, el peticionario argumenta que erró el Tribunal de Apelaciones al no ordenar la celebración de una vista de rebaja de pensión para presentar evidencia de que sus circunstancias personales han cambiado sustancialmente y que procede una rebaja de la pensión finalmente decretada.

De los autos del caso no surge que el peticionario haya radicado una solicitud formal de rebaja de pensión ante el foro primario. La única instancia que sobre ello existe es una oración al final de su última moción de reconsideración, fechada 2 de diciembre de 2001. Es por ello que resolvemos que el peticionario debe acudir al tribunal de instancia, mediante una solicitud formal y específica de rebaja de pensión, donde demuestre que han ocurrido cambios sustanciales que ameriten una modificación de la misma.

Recordemos que es el tribunal o el Administrador de ASUME, a petición de parte o su discreción, quien tiene la potestad de iniciar el procedimiento para revisar o modificar una pensión alimentaria ya establecida cuando aún no han transcurrido los tres (3) años dispuestos en la Ley para el Sustento de Menores. Ello sujeto a que se demuestre que existe justa causa para hacerlo tales como cambios sustanciales en la capacidad de generar ingresos, egresos, gastos nuevos, entre otros. 8 L.P.R.A. sec. 518.

VI

Por los fundamentos que anteceden procede la confirmación tanto de la resolución emitida el 8 de noviembre de 2001 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, como del dictamen del entonces Tribunal de Circuito de Apelaciones, Circuito Regional IV de Aguadilla-Mayaguez, denegatorio del recurso de *certiorari* radicado ante dicho foro judicial por el peticionario José Javier Palau Grajales.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Audrey McConnell Jiménez

    Recurrida

        vs.               CC-2002-485      CERTIORARI

José Javier Palau Grajales

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2004

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria, tanto de la resolución emitida el 8 de noviembre de 2001 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, como del dictamen del entonces Tribunal de Circuito de Apelaciones, Circuito Regional IV de Aguadilla-Mayaguez, denegatorio del recurso de *certiorari* radicado ante dicho foro judicial por el peticionario José Javier Palau Grajales.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta concurre con el resultado sin opinión escrita. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez no intervinieron.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo