EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Brenda I. Franco Resto<br><br>        Apelada<br><br><br>            v.<br><br><br>David Rivera Aponte<br><br>        Apelante | Certiorari<br><br>2012 TSPR 160<br><br>187 DPR ____ |

Número del Caso: AC-2011-5


Fecha: 26 de octubre de 2012


Tribunal de Apelaciones:

        Región Judicial de Bayamón


Abogado de la Parte Peticionaria:

        Lcda. Rosa I. Ward Cid


Abogados de la Parte Recurrida:

        Lcda. Maritza Miranda López
        Lcda. Helga Carrero Echevarría



Materia:  Alimentos – Ingresos considerados para el Cómputo de la pensión alimentaria; partidas  de dieta y millaje y dinero recibido como premio de la Lotería Tradicional de Puerto Rico



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Brenda I. Franco Resto

    Apelada

      v.

                              AC-2011-0005

David Rivera Aponte

    Apelante

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 26 de octubre de 2012.

Una vez más nos vemos precisados a analizar si ciertas partidas constituyen ingreso para propósitos del cálculo de una pensión alimentaria. Particularmente, en esta ocasión nos corresponde resolver si el pago por concepto de dieta y millaje que recibe un alimentante de su patrono constituye ingreso conforme a la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como "Ley Orgánica para la Administración para el Sustento de Menores", 8 L.P.R.A. sec. 501 *et seq*. y las "Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico", Reglamento Núm. 7135 del Departamento de la Familia, 24 de abril de 2006 (Guías de 2006).

Asimismo, debemos determinar si el dinero que se recibe de un premio de la Lotería Tradicional de Puerto Rico es ingreso para calcular la pensión alimentaria. Evaluadas las controversias, resolvemos ambas en la afirmativa.

I

El Sr. David Rivera Aponte y la Sra. Brenda I. Franco Resto procrearon una niña que al momento es menor de edad y está bajo la custodia de su madre. Según surge del expediente, para el 2008, cuando la menor estaba próxima a ingresar a la escuela, la señora Franco Resto presentó una petición de alimentos en su representación. Luego de que las partes completaron sus correspondientes Planillas de Información Personal (PIPE) y se celebró una vista, la Oficial Examinadora de Pensiones dictó una resolución en que impuso al señor Rivera Aponte una pensión alimentaria provisional de $402 mensuales a favor de la menor. En su PIPE, el señor Rivera Aponte no informó como parte de sus ingresos el dinero que le pagaba su patrono por dieta y millaje, ni el premio de la lotería que ganó meses antes.

Pasado más de un año de esa petición, en abril de 2009 la señora Franco Resto presentó una moción para solicitar aumento de pensión. Requirió la revisión de la pensión originalmente concedida a favor de la menor, ya que al momento existían unos gastos que no fueron incluidos en la resolución original. El Tribunal de Primera Instancia acogió la solicitud de la señora Franco Resto y refirió el asunto a la atención de la Oficial Examinadora de Pensiones Alimentarias. Entretanto, la señora Franco Resto

presentó una segunda moción ante el foro primario para requerir nuevamente la revisión de la pensión alimentaria. Argumentó que tenía información de que el señor Rivera Aponte omitió información en su PIPE, por lo que solicitó que, como parte del descubrimiento de prueba, se emitiera una orden al patrono del señor Rivera Aponte, la Autoridad de Energía Eléctrica (AEE), para que certificara sus ingresos, y otra a la Lotería Tradicional o Electrónica para que certificara cualquier pago que el señor Rivera Aponte hubiese recibido. En noviembre de 2009 la Lotería Tradicional certificó el pago de $120,000 y en enero de 2010, la AEE emitió certificación con relación al pago de dieta y millaje.

En la primera vista celebrada en octubre de 2009, la Oficial Examinadora recomendó una pensión alimentaria provisional de $256.15 bisemanal.[1] En mayo de 2010 se celebró la vista final. En ella, las partes presentaron sus segundas PIPE y desfilaron prueba. Tras el correspondiente análisis, la Oficial Examinadora rindió su informe. En sus determinaciones de hechos, concluyó que como empleado de la AEE el señor Rivera Aponte devengaba un ingreso anual de $42,972.27. Calculó que su ingreso neto anual era $29,298.37, es decir, $2,441.53 mensuales. Además, la Oficial Examinadora tomó en consideración que para el 2009 figuraba una partida de $15,392.50 a favor

---

[1] Aunque la resolución indica que esa cantidad era mensual, la parte apelada informa en su alegato en oposición que el acuerdo ante la Oficial Examinadora fue que esa cantidad se pagara bisemanalmente. El señor Rivera Aponte cumplió con lo acordado.

del señor Rivera Aponte por concepto de dieta y millaje. Debido a ello, añadió a sus ingresos mensuales $1,282.70 y además $3,333.33, tras quedar evidenciado que el 15 de enero de 2008 la Lotería de Puerto Rico expidió un cheque a su nombre por $120,000. Esa última suma fue prorrateada a 36 meses y acreditada como ingreso mensual. En fin, en el 2009 se le imputó al señor Rivera Aponte $7,057.56 como ingreso neto mensual. Por su parte, a la señora Franco Resto se le atribuyeron $1,704 como ingreso neto mensual.

Por otra parte, para la fijación de la pensión alimentaria suplementaria, la Oficial Examinadora tomó en consideración los siguientes gastos de la menor: $500 para la matrícula del colegio privado al que asiste; $205 para el pago de la mensualidad del colegio; y $805 para la compra de libros, materiales y uniformes. Además, se añadieron $499 anuales para el pago de unas clases de gimnasia que toma la menor y $625 por el campamento al que asiste los veranos. Los gastos escolares de la niña se prorratearon a $385 mensuales entre ambos padres. Se le impuso al señor Rivera Aponte la obligación de contribuir con el 80.55% del monto total de esos gastos. A su vez, la suma de las clases de gimnasia y campamento de verano fue prorrateada a doce meses, para un total de $102 mensuales. Conforme al por ciento establecido, al señor Rivera Aponte le corresponde contribuir con $82 para el pago de las actividades extracurriculares y con $228 para el pago de los gastos de educación.

En cuanto a las relaciones paterno filiales, la

Oficial Examinadora dispuso que se llevarían a cabo fines de semana alternos, el día de los padres, dos semanas en el mes de junio y dos semanas en el mes de julio. Además, recomendó que en la época navideña el señor Rivera Aponte compartiera con la niña unas horas y días específicos. Exhortó, también, a que en el cumpleaños del señor Rivera Aponte la menor compartiera con él unas horas. Tras calcular ese tiempo, la Oficial Examinadora concluyó que el señor Rivera Aponte compartiría un total de 1956 horas al año con su hija, lo que equivale a un 22.32% del tiempo total. Tras realizar el correspondiente cálculo, recomendó un ajuste de $349 a la pensión alimentaria básica, según disponen las Guías de 2006, supra.

Conforme lo anterior, redujo $349 a la pensión alimentaria básica, por lo que luego del ajuste, la pensión alimentaria resultó en $1,216 mensuales. A esa suma, la Oficial Examinadora le añadió las aportaciones para educación y actividades extracurriculares, por lo que la pensión resultante final ascendió a $1,526 mensuales. Esa suma se depositaría a través de la Administración para el Sustento de Menores (ASUME) efectivo el 1 de mayo de 2009. Además, recomendó que se ordenara el pago de $14,612 por concepto de la retroactividad resultante de la determinación del tribunal. Indicó que esa suma debía satisfacerse en varios plazos que detalló en su informe.

Tras evaluar el Informe de la Examinadora, el Tribunal de Primera Instancia lo acogió. Así, el 21 de junio de 2011 emitió una resolución en que modificó a

$1,526 la pensión alimentaria de la menor. Según recomendó la Oficial Examinadora, ordenó pagar un retroactivo de $14,612 que debería ser satisfecho en un primer pago de $4,383.60 y a partir del 30 de junio de 2010, un plan de pago de $426.18 mensuales, hasta el saldo de la deuda. Además, el foro primario le ordenó pagar una suma de $700 de honorarios de abogado a ser satisfecha dentro de sesenta días de notificada la resolución.

Inconforme con esa determinación, el señor Rivera Aponte presentó ante el Tribunal de Apelaciones una apelación con una moción en auxilio de jurisdicción para que se paralizara una vista de desacato. Mediante resolución, el foro apelativo intermedio declaró sin lugar la moción en auxilio y ordenó a la señora Franco Resto a que presentara su alegato.

En esencia, el señor Rivera Aponte imputó al foro primario errar al considerar como ingreso el dinero que recibe por concepto de dieta y millaje de su patrono. Añadió que se equivocó el Tribunal de Primera Instancia al imputar el ingreso neto disponible para la fijación de la pensión, ya que la cuantía resultante es excesiva y no representa las necesidades de la menor. Por último, sostuvo que el foro apelado erró al adoptar las determinaciones de hechos y conclusiones de derecho presentadas por la Oficial Examinadora.

El foro apelativo intermedio resolvió que en virtud del principio de la interpretación extensiva del concepto "ingreso", según definido por el Art. 2(16) de la Ley Núm.

5, supra, 8 L.P.R.A. sec. 501 (16), el pago recibido por concepto de dieta y millaje debía ser considerado como parte de su ingreso y no como rembolso de gastos incurridos. Arguyó el foro apelativo intermedio que "[l]a interpretación que nos sugiere equivaldría a aceptar una deducción no contemplada por la ley, ya que aquellos empleados que no reciben el rembolso de dichos gastos, podrían requerir entonces que se les deduzcan de sus ingresos los gastos de dieta y millajes en que efectivamente incurren". Apéndice, pág. 21.

Con relación al premio de la lotería, el foro apelativo intermedio resolvió que no incidió el foro primario al considerar como ingreso no recurrente la suma de $120,000 y prorratearla a 36 meses. Fundamentó su conclusión en el Art. 7(A)(1)(d) de las Guías de 2006, supra. Así, entendió que ese cálculo moderó el impacto de la suma recibida. Resolvió que la Oficial Examinadora calculó la pensión a base de la aplicación de las Guías de 2006, supra, por lo que existía una presunción de corrección.

Finalmente, el foro apelativo intermedio no aceptó la alegación del señor Rivera Aponte de que la pensión impuesta sobrepasaba lo que establece el Art. 4(34) de las Guías de 2006 como reserva para su manutención.

Concluyó el Tribunal de Apelaciones que

> [e]l argumento del apelante está sustentado en el ingreso neto que éste informó en su Planilla de Información Personal y Económica (PIPE), que asciende a $2,441.53 mensuales. Sin embargo, de la prueba desfilada y que

consta en el expediente surgen ciertas discrepancias entre el ingreso bruto alegado por el apelante en la PIPE y lo que consta en la certificación emitida por el patrono. Además, el apelante omite en la PIPE las partidas obtenidas por concepto de dietas y millaje y el premio de la lotería recibido.

La prueba documental en el expediente apoya los cálculos que el foro primario consideró como ingresos del apelante y que incluyen el premio de la lotería y las dietas devengadas por éste. A partir de dicho cálculo, la pensión fijada no tiene el efecto de reducir la reserva de ingresos del apelante.

No basta con meras alegaciones para cuestionar la imposición de la pensión alimentaria. El apelante no informó todos los ingresos devengados, indispensables para valorizar correctamente la pensión alimentaria de su hija. En ausencia de prueba que rebatiera la presunción de corrección de las determinaciones de hecho y conclusiones de derecho a las que llegó el foro sentenciador, este Tribunal no está en posición de intervenir con su apreciación.

Apéndice, pág. 22.

Insatisfecho, el señor Rivera Aponte acudió a este Tribunal mediante recurso de apelación. En esencia, atribuye al Tribunal de Apelaciones errar al considerar ingreso el dinero que recibe de su patrono por concepto de dieta y millaje. Asimismo, afirma que incidió el foro apelado al confirmar la sentencia del Tribunal de Primera Instancia que prorrateó el ingreso recibido por concepto del premio de la lotería. Arguye, además, que la imputación de esa partida crea un ingreso ficticio e inexistente, más aún cuando fue recibido previo a instarse la acción de alimentos. Finalmente, afirma que al ratificarse la determinación del foro primario, se avala la imposición de una pensión que excede significativamente

las necesidades de la alimentista, lo que lo deja en un estado de total indefensión, al punto de privarle de la reserva reconocida por ley.

El 20 de mayo de 2011 acogimos el recurso como una apelación. Esto, en virtud del Art. 3.002 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, 4 L.P.R.A. sec. 24s, que nos otorgó la competencia para atender un recurso mediante apelación cuando se plantee la existencia de un conflicto entre sentencias del Tribunal de Apelaciones en casos apelados ante ese foro.[2] Con el beneficio de la comparecencia de ambas partes, pasamos a resolver.

## II

En ocasiones reiteradas hemos manifestado que la obligación de los padres de proveer alimentos a sus hijos menores está revestida del más alto interés público. Véanse, Llorens Becerra v. Mora Monteserín, 178 D.P.R. 1003, 1016 (2010); Ferrer v. González, 162 D.P.R. 173, 177 (2004); Amadeo v. Santiago Torres, 133 D.P.R. 785, 732 (1993); López v. Rodríguez, 121 D.P.R. 23, 28 (1988); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 72 (1987). Por eso,

> el derecho de los hijos a recibir alimentos, y la correlativa obligación de los padres a darlos cuando corresponda, tiene su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que

---

[2] Sonia Ramos Delgado v. Gabriel Reyes Ponce, KLAN-2007-0887; Magaly López Caraballo v. Antonio Bosques Arroyo, KLCE-2006-01468; María Cuoto v. Giovanni Alemán, KLCE-0000698.

> son valores de la más alta jerarquía
> ético-moral y que constituyen una
> piedra angular de toda sociedad
> civilizada.

Argüello v. Argüello, 155 D.P.R. 62, 69 (2001).

Cónsono con lo anterior, "[l]a obligación de brindar alimentos a los menores de edad surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidos". McConnell v. Palau, 161 D.P.R. 734, 745 (2004). Así, "la obligación de alimentar no sólo es un deber moral, sino que, además, se trata de un deber jurídico que, en nuestra jurisdicción, ha sido consagrado en varios de los artículos de nuestro Código Civil". Martínez v. Rodríguez, 160 D.P.R. 145, 151-152 (2003). Estatutariamente, la obligación alimentaria está establecida expresamente en los Arts. 118, 142, 146 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 466, 561, 565 y 601. Véase, además, McConnell v. Palau, supra, pág. 745. "La referida obligación cubre todo lo que es  indispensable al sustento del menor, su habitación, vestido y asistencia médica, entre otros", según la posición social de la familia. Íd., págs. 745-746. Véase, además, Art. 142 del Código Civil, supra.

Aunque la obligación alimentaria está recogida en el Código Civil, "[e]s un derecho de tan alto interés público que el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento". Chévere v. Levis I, 150 D.P.R. 525, 535 (2000). Véase, además, McConnell v. Palau, supra, pág. 745. Ejemplo de

ello es la Ley Núm. 5, supra, según enmendada. Particularmente, esa pieza legislativa "prescribe ciertas normas que rigen el proceso para fijar la pensión alimenticia", con el propósito de que se establezca una pensión "justa y razonable" para el beneficio del menor alimentista. Llorens Becerra v. Mora Monteserín, supra, pág. 1017. Véase, además, Art. 4 de la Ley Núm. 5, supra, 8 L.P.R.A. sec. 503. En armonía con los postulados de la Ley Núm. 5, supra, se promulgaron las "Guías para Determinar y Modificar Pensiones Alimentarias en Puerto Rico", supra. Con ellas, se pretende "determinar las pensiones alimentarias de los/as alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos; los cuales faciliten el cómputo de la cuantía de la obligación alimentaria". Art. 3, Guías de 2006, íd.

Respecto a la cuantía de la pensión que el alimentante deberá pagar al alimentista, el Art. 153 del Código Civil, supra, dispone que "el padre y la madre tienen respecto a los hijos no emancipados el deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna". Ahora bien, según ordena el Art. 146 del Código Civil, supra, el criterio rector para determinar una pensión alimentaria es que siempre sea proporcional a los recursos del que los da y a las necesidades del que los recibe. Por ello, se reducen o aumentan "en proporción a los recursos del primero y a las necesidades del segundo". Íd. Así,

tal determinación debe ser realizada en consideración a dos criterios principales, a saber: (i) los recursos y medios de fortuna del alimentante, de forma tal que se pueda determinar su capacidad económica para cumplir con su obligación alimentaria y (ii) las necesidades del alimentista, es decir, cuánto necesita éste para cubrir sus necesidades de sustento, habitación, vestido, asistencia médica y educación, conforme su posición social.

Martínez v. Rodríguez, supra, pág. 153.

Además de lo anterior es importante que durante el proceso evaluativo para la determinación de la pensión alimentaria, se ausculte "la capacidad económica del padre o la madre no custodio, como la del padre o de la madre custodio, toda vez que ambos están obligados a prestar alimentos de forma proporcional a sus recursos". Llorens Becerra v. Mora Monteserín, supra, pág. 1018. Véanse, además, López v. Rodríguez, supra, pág. 123; Vega v. Vega Oliver, 85 D.P.R. 675, 679 (1962).

Recientemente reiteramos en Llorens Becerra v. Mora Monteserín, supra, pág. 1017, el proceso evaluativo que debe realizarse para establecerse la capacidad económica del alimentante. Martínez v. Rodríguez, supra, pág. 156. Al ejecutar esa tarea, los conceptos "ingreso bruto" e "ingreso neto" son esenciales. Íd., pág. 1019. De entrada, hemos establecido que la ley requiere que primeramente se determine el ingreso bruto del alimentante para luego establecer su ingreso neto. Íd., pág. 1018. Véase, además, Martínez v. Rodríguez, supra, pág. 159. Este último se fijará luego de realizar las deducciones mandatorias y las aceptadas establecidas en la ley. Véanse, Art. 2(16) de la

Ley Núm. 5, supra, 8 L.P.R.A. sec. 501 y Arts. 4(11) y 4(12) de las Guías de 2006, supra. Una vez hecho ese ejercicio, el cálculo arribado será, "el punto de partida para la fijación de la pensión alimentaria". Martínez v. Rodríguez, supra, pág. 156; Sarah Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, San Juan, Puerto Rico, Pubs. STP, 2007, pág. 8.05. En la realización de ese ejercicio, el Art. 19 (b) de la Ley Núm. 5, supra, 8 L.P.R.A sec. 518(b), ordena que se tome en consideración también el capital o el patrimonio total del alimentante para fijar la pensión alimenticia a satisfacerse. Llorens Becerra v. Mora Monteserín, supra, pág. 1017. Por eso, hemos expresado que

> [p]ara determinar la capacidad económica de cada alimentante es preciso tomar en cuenta *todos* los ingresos devengados por éste, hasta los que no aparezcan informados en la planilla de información personal. *Rodríguez Rosado v. Zayas Martínez*, 133 D.P.R. 406 (1993). El tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. "Puede, al fijar la cuantía de la pensión, considerar aspectos tales como *el estilo de vida que lleva el alimentante, su capacidad para generar ingresos*, la naturaleza y cantidad de las propiedades con que cuenta, *la naturaleza de su empleo o profesión* y sus otras fuentes de ingreso." (Énfasis en el original.)
>
> Argüello v. Argüello, supra, págs. 72-73.

Los incisos dieciséis y diecisiete del Art. 2 de la Ley Núm. 5, supra, definen los conceptos "ingreso" e "ingreso neto". 8 L.P.R.A. secs. 501(16)-501(17). Sobre el concepto ingreso, el articulado dispone que

[c]omprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines del lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.

Art. 2(16), 8 L.P.R.A. sec. 501(16).

Por su parte, la ley define el "ingreso neto" como

[a]quellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.

Art. 2 (17), 8 L.P.R.A. sec. 501(17).

Las definiciones que proveen las Guías de 2006, supra, son fundamentalmente idénticas en cuanto a esos conceptos. Véanse, Arts. 4(15), 4(16) y 4(18) de las Guías de 2006, supra. Específicamente, en cuanto al ingreso bruto, las Guías de 2006 lo definen como "la totalidad de los ingresos con los que cuentan [sic] la persona custodia y no custodia con anterioridad a descontarse las deducciones mandatorias y las aceptadas". Art. 4(16) de las Guías de 2006, supra. Del ingreso bruto, comenta Sarah Torres Peralta que incluye "la totalidad de los ingresos del alimentante, interpretado este concepto en su más amplia acepción". Torres Peralta, op cit., pág. 8.14. Añade que "en la determinación inicial de lo que constituye ingreso bruto, se considerarán todos los emolumentos que recibe el alimentante, sin exclusión alguna. Ello es así, independientemente de cuál es la fuente de la que provienen los ingresos del alimentante". Íd.

Precisamente en Llorens Becerra v. Mora Monteserín, supra, pág. 1020, expresamos que esa visión

> extensiva del concepto ingreso responde al propósito de la Ley Núm. 5 de asegurar el bienestar del menor alimentista y el derecho de éste a recibir alimentos en proporción a sus necesidades y a los recursos reales de quienes están obligados a brindarle alimentos. Así, el artículo 3 de la Ley Núm. 5, 8 L.P.R.A. sec. 502, establece que las disposiciones de dicha ley deben interpretarse liberalmente a favor de los mejores intereses del menor que necesita alimentos.

Luego de un análisis ilustrativo del concepto de ingreso bruto de la Ley Núm. 91 de 29 de junio de 1954, según enmendada, conocida como Ley de Contribuciones sobre Ingresos de 1954, señalamos que al igual que el de la Ley Núm. 5, supra, se redactó en sentido amplio y abarcador. Íd., pág. 1022. Véanse, además, Orsini v. Srio. de Hacienda, 177 D.P.R. 596 (2009); Genovevo Meléndez Carrucini, Ingreso tributable: inclusiones y doctrinas, San Juan, Puerto Rico, Instituto de Contribuciones de Puerto Rico, Inc., 1991, págs. 149-152. Ahora bien, aclaramos que "a pesar de la amplitud del lenguaje con el cual se define el concepto ingreso bruto, se confrontan con frecuencia dificultades `en la caracterización de partidas en cuanto a si son o no ingreso´ para fines contributivos". Íd., pág. 1023 citando a Meléndez Carrucini, op cit., pág. 152. Explicamos que a pesar de las similitudes entre ambas definiciones, "[e]l alto interés público de asegurar el bienestar de los menores alimentistas y el derecho de éstos a recibir alimentos, inherente a su derecho a la vida, podría requerir una interpretación aún más abarcadora del concepto ingreso en el contexto de la imposición de una pensión alimenticia". Íd., pág. 1024.

A pesar de lo anterior, pautamos que "la interpretación del concepto ingreso debe concordar con el principio de proporcionalidad que rige la fijación de una pensión alimenticia". Íd. Por ello, "las inclusiones al amparo de este concepto deben, a su vez, representar

ganancias, beneficios, rendimientos o frutos con los que realmente cuente el alimentante, de forma tal que se establezca una pensión justa y razonable". Íd., pág. 1025.

### III

En su alegato ante este Tribunal, el señor Rivera Aponte imputa como primer error que el foro apelativo intermedio erró al concluir que el dinero recibido por parte de su patrono en concepto de dieta y millaje se debe computar como ingreso. Arguye que

> [e]stos son pagos que el patrono le hace al empleado pero no como el resultado de un trabajo realizado o por concepto de salario o ingreso adicional. Se trata de gastos que el empleado no está supuesto a hacer pero que, lo hace porque sabe que su patrono se lo rembolsará y que, dadas ciertas circunstancias, los mismos son necesarios para que el trabajo a realizar pueda, en efecto, hacerse de la manera más eficiente. En otras palabras, el empleado incurre en el menoscabo temporero de su patrimonio, únicamente porque sabe que dicha porción de dinero le será devuelta por quien, en verdad debía haberlo gastado en un principio.

Apelación, pág. 8.

A la luz de lo anterior, acredita que la partida de "gastos rembolsados" incluida en su Formulario 499R-2W-2PR no debe considerarse ingreso o beneficio que aumenta su patrimonio, sino como parte de las deducciones permitidas por el Art. 2(17) de la Ley Núm. 5, supra, en particular aquellas "otras requeridas mandatoriamente por ley". En apoyo a lo anterior, razona que las Guías de 2006, supra,

no definen cuáles son esas otras deducciones "requeridas mandatoriamente por ley" que se pueden deducir.

En contraposición, la señora Franco Resto alega que el pago de dieta y millaje que recibió el señor Rivera Aponte es un beneficio negociado como parte del Convenio Colectivo de su patrono y el gremio al que pertenece, la Unión Industrial de Trabajadores y Construcciones Eléctricas Inc. (UITICE). Asegura que un empleado de la AEE que esté bajo el convenio colectivo aprobado por la UITICE puede recibir el beneficio del pago de dieta y millaje aunque no incurra en gastos. Afirma que esta es la situación del señor Rivera Aponte, quien supuestamente admitió en una vista ante la Oficial Examinadora que no tenía que acreditar gastos para recibir el pago por dieta y millaje.

Nunca nos hemos expresado sobre si la concesión del pago de dieta y millaje constituye ingreso para propósitos del cálculo de la pensión alimentaria. Sin embargo, varios tribunales de los estados de la Unión sí lo han hecho. La norma adoptada es que "[l]as dietas que recibe el empleado o funcionario en su empleo o trabajo, constituyen ingreso imputado en la medida que excedan de lo razonable". Torres Peralta, op. cit., pág. 10.47.

Particularmente, en In re Marriage of Worrall, 334 Ill. App. 3d 550 (2002), el Departamento de Ayuda Pública de Illinois presentó una petición para aumentar la pensión alimentaria que el padre alimentante proveía a sus hijos tras un alegado cambio sustancial en las necesidades de

los menores. El Tribunal de Circuito de ese estado negó la petición, pues encontró que los ingresos del alimentante eran insuficientes si se excluían del cálculo de sus ingresos las partidas que su patrono le pagaba por concepto de dieta y millaje para gastos de viaje. Inconforme, el Departamento apeló. El Tribunal de Apelaciones sostuvo que, en general, las partidas por concepto de dieta y millaje para gastos de viaje constituyen ingresos para efectos del cálculo de la pensión alimentaria. Ahora bien, ese foro aclaró que lo anterior **es sin perjuicio de que el alimentante pueda probar en su día que esas partidas, en efecto, se utilizaron para gastos en la consecución de su empleo y no para su beneficio económico**. De acreditar lo anterior, entonces las partidas correspondientes no podrían considerarse ingreso. A iguales efectos, véanse, In re Marriage of Tegeler, 365 Ill.App.3d 448, 456 (2006); In Re Marriage of Crossland, 307 Ill.App.3d. 292, 295 (1999); Buckner v. Jordan, 952 S.W.2d 710, 711-712 (Mo. 1997); Voll v. Voll, CN93-09463, 1998 WL 665528 (Del. Fam. Ct. Apr. 13, 1998)

Precisamente en In re Marriage of Worrall, supra, el tribunal aclaró también que no veía razón para que la cuantía de la pensión alimentaria que un padre debe aportar dependa en anotaciones en su nómina que están simplemente designadas para obtener ventaja contributiva. Permitir ese resultado, razonó el tribunal, exaltaría la forma sobre la substancia. Íd. Por ello, concluyó que las

concesiones por concepto de dieta y millaje generalmente constituyen ingresos para propósito de calcular la pensión alimentaria. Sin embargo, ese ingreso está sujeto a reducirse en la medida que el alimentante pruebe que la cantidad otorgada como dieta y millaje fue utilizada para gastos de viaje y no para su beneficio económico. Al razonar de esa forma, distinguió los pronunciamientos hechos en In re Marriage of Crossland, supra. Allí se resolvió que un padre alimentante no puede reducir de su ingreso bruto una partida por concepto de dieta y millaje si su patrono no designa una porción como tal en su talonario de sueldo.

En síntesis, el pago de dieta y millaje, en general, constituye ingreso para efectos del cálculo de la pensión alimentaria de los hijos. Sin embargo, ese ingreso está sujeto a reducirse en la medida en que el alimentante demuestre que el dinero pagado por ese concepto fue utilizado para gastos de oficio reales y no para su beneficio económico. La carga de probar lo anterior recae en el alimentante.

El señor Rivera Aponte aduce que el dinero recibido por parte de su patrono en concepto de dieta y millaje no puede ser considerado un ingreso porque es el rembolso de unos gastos que le corresponde satisfacer al patrono. Es decir, afirma que se trata de unos gastos que a él no le concierne desembolsar, pero como sabe que su patrono se los rembolsará, los paga para que el trabajo pueda realizarse.

El derecho reseñado revela sin ambages que el dinero recibido en concepto de dieta y millaje deber ser considerado como ingreso para propósitos del cálculo de la pensión alimentaria a imponerse. Fundamentándose en las definiciones amplias y abarcadoras de ingreso contenidas en las leyes de alimentos de los estados, varios tribunales estatales han determinado que lo que se recibe en concepto de dieta y millaje es ingreso para propósitos del cálculo de la pensión alimentaria. Recordemos que la definición de ingreso contenida en la Ley Núm. 5, supra, es amplia y abarcadora. Debido a ello, es razonable que en nuestra jurisdicción, al igual que se ha hecho en varios estados, consideremos ingreso el dinero recibido como partida de dieta y millaje.

Ahora bien, la designación de esa cuantía como parte de los ingresos de un alimentante no significa que no haya forma de demostrar lo contrario. Como se sabe, en la medida que esa suma no resulte en un beneficio económico, sino más bien en un gasto rembolsado, no procede imputarlo como ingreso. Sin lugar a dudas, existen instancias en que el pago recibido en concepto de dieta y millaje es el rembolso de gastos relacionados con el empleo que le corresponde sufragar al patrono. En esos casos, no cabe catalogar ese monto como un ingreso que enriquece o beneficia al alimentante.

No obstante, otro es el escenario cuando, por ejemplo, a un empleado se le rembolsan veinte dólares en concepto de dieta y millaje, pero realmente acreditó gastar quince. En

esa circunstancia, el exceso de cinco dólares es efectivamente un ingreso para fines de la Ley Núm. 5, supra.

Del expediente no surge que el señor Rivera Aponte acreditara la procedencia de los gastos incurridos al momento en que la Oficial Examinadora adjudicó la partida de dieta y millaje como ingreso. Aunque la señora Franco Resto afirma en su alegato en oposición que en una de las vistas el señor Rivera Aponte aceptó que no tenía que acreditar gastos para recibir el pago por dieta y millaje, no contamos con una transcripción de la vista que nos permita concluir eso. Por último, el derecho reseñado demuestra que el hecho de que la partida de dieta y millaje aparezca en un Formulario 499R-2W-2PR como rembolso, no significa que en realidad lo sea. Como se indicó en In re Marriage of Worrall, supra, puede tratarse de anotaciones en su nómina que están simplemente designadas para obtener ventaja contributiva.

Así, aunque es correcta la adjudicación de esa cantidad como ingreso, procede que devolvamos el caso para que se le permita al señor Rivera Aponte documentar si, en efecto, el dinero rembolsado fue por gastos incurridos en la consecución de su oficio. Si eso se demuestra, la partida de dieta y millaje correspondiente a esos gastos no se considerará ingreso para fines de la Ley Núm. 5, supra.

IV

Por estar íntimamente relacionados, discutiremos el segundo y tercer error conjuntamente. Como segundo señalamiento de error, el señor Rivera Aponte aduce que se equivocó el foro apelativo intermedio al confirmar al foro primario en cuanto a la aplicación de las guías mandatorias y establecer una pensión alimentaria que excede las necesidades de la alimentista y sus recursos económicos. Acepta que los $120,000 recibidos como premio de la Lotería Tradicional deben tomarse en consideración para determinar su capacidad económica. Esto, pues la Ley Núm. 5, supra, dispone que se tomarán en consideración para determinar la capacidad económica de un alimentante, no solo el ingreso neto ordinario, sino el capital o patrimonio total de la persona obligada a pagar una pensión alimentaria. Sin embargo, está en desacuerdo con que se haya prorrateado esa cantidad de dinero en treinta y seis meses.

A. El peticionario está en lo correcto cuando acepta que el dinero recibido por el premio de la Lotería Tradicional debe computarse como parte de sus ingresos. Desde hace mucho tiempo la jurisprudencia estatal ha reconocido que el ingreso recibido por concepto de un premio de la lotería constituye ingreso y debe computarse para el cálculo de la pensión alimentaria. A esos efectos, como correctamente señala la señora Franco Resto en su alegato en oposición, en In re Marriage of McCord, 910 P.2d 85

(Colo. Ct. App. 1995),[3] el Tribunal de Apelaciones de Colorado, amparándose en la definición de ingreso bruto que establecía la ley del estado para ese entonces, señaló que aunque un premio de la lotería no esté expresamente definido en la ley como parte de los ingresos, el lenguaje amplio y abarcador del estatuto permite su inclusión como tal. A igual conclusión han llegado los tribunales de otros estados. Sobre ese particular, véanse, además, Green v. Scott, 687 So. 2d 655, 658 (La. App. 2 Cir. 1997)(Las ganancias anuales producto de un premio de la lotería deben ser consideradas como ingreso bruto aunque representen un flujo de fondos no percibidos y estén en un premio. Ese flujo anual de fondos claramente aumenta los estándares de vida de quien los recibe y mejora su capacidad financiera para proveer a sus hijos.); In re Marriage of Nimmo, 891 P.2d 1002, 1006 (Colo. 1995) (El ingreso puede provenir de parientes, amigos, inversiones, fideicomisos o la lotería.); Pratt v. McCullough, 100 Ohio App.3d 479, 654 N.E.2d 372 (1995)(Los ingresos anuales del padre alimentante, que ascendieron a $307,692.30 luego de ganar un premio de la lotería, permiten un aumento en la

---

[3] El tribunal señaló: "[w]hile the statute may not specifically include lottery winnings within the definition of income, its broad language satisfies us that the General Assembly intended to include lottery winnings as income for purposes of calculating a parent's child support obligation". Cabe señalar que este estatuto fue posteriormente enmendado y ahora excluye algunos premios de la lotería. Art. 10 del Uniform Dissolution of Marriage Act, Section 14-10-115(7)(a)(I)(A), C.R.S.

pensión alimentaria de $3,276 a $31,215.38, aunque el alimentante alegue que esa cantidad es mayor a las necesidades del menor alimentista.); County of Contra Costa v. Lemon, 205 Cal.App.3d 683 (1988)(Las ganancias completas del premio de la lotería son ingreso para propósitos de la determinación de la pensión alimentaria.)

Como dijimos al inicio, tanto el Art. 2(16) de la Ley Núm. 5, supra, como el Art. 4(15) de las Guías de 2006, supra, incluyen en su definición de ingreso, las "ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia". Asimismo, el Art. 19(b) de la Ley Núm. 5, supra, ordena que "[p]ara la determinación de los recursos económicos del obligado a pagar una pensión alimentaria, **se tom[e] en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante**". De la lectura de estos preceptos resulta forzoso ultimar que el lenguaje utilizado por el legislador fue lo suficientemente abarcador y amplio como para concluir que los premios recibidos por concepto de un premio de la lotería son ingreso para fines del cálculo de la pensión alimentaria.

B.   El señor Rivera Aponte imputa también como error que el foro apelativo intermedio confirmara la determinación del foro primario de aplicar las guías mandatorias cuando la cuantía resultante como pensión excede los gastos informados del menor y lo deja en estado de indefensión.

De entrada, "*existe una clara política pública de que las pensiones alimentarias se adjudiquen conforme a las*

*guías mandatorias*". (Énfasis en el original.) <u>McConnel v. Palau</u>, <u>supra</u>, pág. 754. A esos efectos, el Art. 19 de la Ley Núm. 5, <u>supra</u>, ordena que "[e]n todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección".

De igual manera es conocido que "la cuantía de los alimentos deberá ser fijada tomando en consideración, no sólo las necesidades del alimentista, **sino también los recursos que el alimentante tiene a su disposición**". Art. 146 del Código Civil, <u>supra</u>. Igual exigencia contiene la Ley Núm. 5, <u>supra</u>, al requerir que "[p]ara la determinación de los recursos económicos del obligado a pagar una pensión alimentaria, se tomará en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante". Art. 19 de la Ley Núm. 5, <u>supra</u>. Compárese con <u>Chévere v. Levis II</u>, 152 D.P.R. 492, 502 (2000).[4]

Un análisis del derecho aplicable revela que el hecho de que la pensión alimentaria impuesta excediera los gastos que tenía la menor según desglosados en la PIPE, no es razón para concluir que la pensión es injusta, arbitraria

---

[4] Asimismo, el Art. 153 del Código Civil, <u>supra</u>, dispone que "el padre o la madre o ambos tienen el deber de alimentar a sus hijos menores con arreglo a su fortuna".

o irrazonable. La cuantía de pensión alimentaria impuesta al señor Rivera Aponte surgió del cálculo de los ingresos que reportó en su PIPE.

Como último señalamiento de error, el señor Rivera Aponte no está de acuerdo con que se le prorrateara la cantidad recibida por el premio de la lotería en 36 meses. Arguye que no existe prueba en el caso que establezca que al solicitar los alimentos, ni al fijarse la pensión, él contara con el dinero recibido por concepto del premio de la lotería. Añade que cuando se fijaron las pensiones en mayo de 2008 y octubre de 2009 ya él había cobrado el dinero y no había prueba en el récord que estableciera que ese era un hecho desconocido para la señora Franco Resto. Sus argumentos no nos convencen.

Surge del expediente que cuando el señor Rivera Aponte completó la primera PIPE **no informó** los ingresos por concepto de dieta y millaje ni el premio de la lotería que ganó meses antes. Fue luego de un arduo descubrimiento de prueba que esa información surgió. Con esa actuación evidentemente el señor Rivera Aponte ocultaba el incremento en patrimonio que eso le representaba. Que haya gastado el dinero no exime que se tome en consideración para propósitos del cálculo de sus ingresos. Avalar su propuesta alentaría que los padres gasten sus ingresos desmedidamente en detrimento del bienestar de sus hijos.

Finalmente, ~~no~~ nos parece irrazonable que se haya prorrateado el premio de la lotería en 36 meses. En Clary v. Clary, 54 S.W.3d 568, 573 (Ky. Ct. App. 2001) el

Tribunal de Apelaciones de Kentucky sostuvo, amparándose en In re Marriage of Bohn, 8 P.3d 539 (Colo. Ct. App. 2000), que "el receptor de una cantidad en pago único tiene acceso inmediato a los fondos y por lo tanto es apropiado que se reconozca como ingreso esa suma total durante el año en que se recibió". (Traducción nuestra.) (Unlike periodic payments, **a recipient of a lump sum amount has immediate access to the funds and therefore recognition of the entire amount as income the year received is appropriate**". Véanse, además, Hazelwood v. Hazelwood, 2008-CA-001558-ME, 2009 WL 2837430 (Ky. Ct. App. Sept. 4, 2009); Collier v. Collier, 2008-CA-000293-ME, 2008 WL 7438781 (Ky. Ct. App. Oct. 3, 2008); Knochelmann v. Bjelland, 2003-CA-002258-MR, 2005 WL 3487955 (Ky. Ct. App. Dec. 22, 2005). Es decir, hay tribunales que han permitido que para propósitos del cálculo de la pensión alimentaria, se impute el dinero recibido en un solo pago como ingreso en el año contributivo en que se recibe.

En este caso, el premio de la lotería no se recibió en pagos periódicos, sino en un solo pago. Así, conforme la jurisprudencia citada, se debió imputar como parte del ingreso para el 2008. Tratar análogamente el ingreso que se recibe por este concepto a como se computan las horas extras, comisiones, propinas o bonificaciones, según el Art. 7A1(d) de las Guías de 2006, supra, [5] no fue

---

[5] "**Artículo 7. Instrucciones para determinar la pensión alimentaria**

razonable. El hecho que ese proceder resultara más beneficioso para el alimentante no era fundamento suficiente para aplicar el Art. 7A1(d), supra. El tratamiento especial que le dan las Guías de 2006, supra, a las horas extras, propinas y comisiones estriba en la variabilidad inherente de ese tipo de ingreso. La cantidad que un alimentante recibe por concepto de horas extras, propinas y comisiones puede variar constantemente, por lo que resulta útil computar un promedio mensual a la hora de calcular el ingreso bruto del alimentante. Ahora bien, la variabilidad del ingreso está ausente en el caso del premio que recibió el señor Rivera Aponte pues fue en un solo pago. Por consiguiente, no procedía prorratearlo.

V

Por los fundamentos antes expuestos, se modifica la sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que celebre una

---

**A. Cómputo de la pensión alimentaria básica- Se establecen los siguientes pasos para determinar la pensión alimentaria básica**

   **1. Determinar el ingreso bruto anual de la persona custodia y la no custodia:**

     …

     d) Para determinar la cantidad que se tomará en consideración por concepto de horas extras, comisiones y/o propinas; el/juzgador/a deberá considerar, entre otros factores pertinentes, el promedio mensual recibido durante los treinta y seis (36) meses que anteceden a la vista. Cuando la persona custodia o no custodia lleve empleada menos de este período de tiempo, se promediará la cantidad efectivamente haya recibido a partir de la fecha de haber comenzado en el empleo.
     …".

vista en que determine si el dinero recibido por el señor Rivera Aponte en concepto de dieta y millaje constituye el rembolso de gastos incurridos o un beneficio económico de su empleo y se impute como ingreso solamente la porción que no corresponda a un rembolso de gastos. Asimismo, lo devolvemos también para que se impute el premio de la lotería como ingreso total para el 2008 y se haga el correspondiente ajuste a la pensión alimentaria.

Se dictará sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Brenda I. Franco Resto

    Apelada


     v.

                                AC-2011-0005

David Rivera Aponte

    Apelante


SENTENCIA

En San Juan, Puerto Rico, a 26 de octubre de 2012.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se modifica la sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que celebre una vista en que determine si el dinero recibido por el señor Rivera Aponte en concepto de dieta y millaje constituye el rembolso de gastos incurridos o un beneficio económico de su empleo y se impute como ingreso solamente la porción que no corresponda a un rembolso de gastos. Asimismo, lo devolvemos también para que se impute el premio de la lotería como ingreso total para el 2008 y se haga el correspondiente ajuste a la pensión alimentaria.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Rivera García concurren con el resultado sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo