EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María E. Quiñones Rivera, por sí y en protección de los intereses de los menores E.O.M., A.D.O.M. y A.O.M.; Denisse Jiménez Hernández, por sí y en protección de los intereses de los menores D.R.J. y D.R.J.; Jadira Jiménez Hernández, por sí y en protección de los intereses de los menores E.B.J. y E.B.J.; Rosemary Jiménez Hernández por sí y protección de los intereses de la menor J.S.J.; Jacqueline Jiménez Hernández por sí y en protección de los intereses de los menores G.G.J., G.G.J. e I.G.J.; Jeniffer Figueroa Rosado, por sí y en representación de los intereses de los menores A.G.L.F. y D.G.L.F.; C.J.M.C. también conocida como Teresa Karolina Muñoz Cruz; Comité Timón de Familiares de Personas con Impedimentos, Inc., también conocida como el Comité Timón del Pleito de Clase de Educación Especial, Proyecto Matria, Inc., Casa Juana Colón, Apoyo y Orientación a La Mujer, Inc., Organización Solidaridad Humanitaria, Inc.; Comedores Sociales de Puerto Rico, Inc.<br><br>        Peticionarios<br><br>                v.<br><br>Departamento de Educación; Eligio Hernández Pérez en su capacidad oficial como Secretario de Educación; Estado Libre Asociado de Puerto Rico<br><br>        Recurridos | 2020 TSPR 54<br><br>204 DPR _____ |

Número del Caso:  CT-2020-07

Fecha:  9 de julio de 2020

Tribunal de Apelaciones:

        Panel X

Abogadas de la parte peticionaria:

Lcdo. Osvaldo Burgos Pérez
Lcda. Mary C. Rivera Martínez
Lcda. Melissa Hernández Romero

Oficina del Procurador General:

Lcdo. Pedro A. Vázquez Montijo
Subprocurador General

Lcda. Carmen A. Riera Cintrón
Procuradora General Auxiliar

Materia:  Resolución del Tribunal con Voto Particular de Conformidad y Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María E. Quiñones Rivera, por sí y en protección de los intereses de los menores E.O.M., A.D.O.M. y A.O.M.; Denisse Jiménez Hernández, por sí y en protección de los intereses de los menores D.R.J. y D.R.J.; Jadira Jiménez Hernández, por sí y en protección de los intereses de los menores E.B.J. y E.B.J.; Rosemary Jiménez Hernández por sí y protección de los intereses de la menor J.S.J.; Jacqueline Jiménez Hernández por sí y en protección de los intereses de los menores G.G.J., G.G.J. e I.G.J.; Jeniffer Figueroa Rosado, por sí y en representación de los intereses de los menores A.G.L.F. y D.G.L.F.; C.J.M.C. también conocida como Teresa Karolina Muñoz Cruz; Comité Timón de Familiares de Personas con Impedimentos, Inc., también conocida como el Comité Timón del Pleito de Clase de Educación Especial, Proyecto Matria, Inc., Casa Juana Colón, Apoyo y Orientación a La Mujer, Inc., Organización Solidaridad Humanitaria, Inc.; Comedores Sociales de Puerto Rico, Inc.<br><br>    Peticionarios<br><br>       v.<br><br>Departamento de Educación; Eligio Hernández Pérez en su capacidad oficial como Secretario de Educación; Estado Libre Asociado de Puerto Rico<br><br>    Recurridos | CT-2020-0007 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de julio de 2020.

Atendidas la *Solicitud de certificación intrajurisdiccional*, la *Moción de orden provisional en auxilio de jurisdicción*, la *Moción suplementando solicitud de auxilio de jurisdicción* y la *Segunda moción suplementando*

*auxilio de jurisdicción* que presentó la parte peticionaria, se declaran no ha lugar.

Adelántese por vía telefónica y notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emite un Voto particular de conformidad al que se une el Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco.

El Juez Asociado señor Colón Pérez disiente y emite un Voto particular disidente al que se une la Juez Asociada señora Rodríguez Rodríguez. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la expresión siguiente:

> Este Tribunal tuvo ante sí la oportunidad de proveer certeza, sin más dilaciones, a unos sectores del País altamente desventajados en medio de una emergencia de salud pública sin precedentes. En concreto, pudimos haber decidido —de manera definitiva— si existe un deber gubernamental de proveer alimentos a los estudiantes de escuela pública y al resto de la población en necesidad en un estado de emergencia. Se trata de una controversia de la cual depende la supervivencia de sectores sumamente vulnerables en Puerto Rico, a saber: los menores de edad, las familias de bajos recursos y las personas que no han podido obtener los medios para su sustento por razón de las medidas impuestas para contrarrestar los efectos de la pandemia.

> En cumplimiento con el rol institucional de este Tribunal, nos correspondía utilizar los mecanismos a nuestro alcance para atender prioritariamente un asunto urgente y revestido de un altísimo interés público. Lo anterior, particularmente en vista de que en este caso están en juego las garantías mínimas de los menores de edad que hemos consagrado como parte del derecho constitucional a la vida. Martínez v. Rodríguez, 160 DPR 145, 151 (2003); Rodríguez Pagán v. Depto. Servicios Sociales, 132 DPR 617, 632-633 (1993). Los menores de edad en Puerto Rico tienen derecho a disfrutar del cuidado y protección del Estado cuando sus padres y familias no puedan hacerlo. Art. 2 de la Carta de los Derechos del Niño, Ley Núm. 338-1998, 1 LPRA sec. 412. No obstante, esa garantía pierde efectividad y solidez si, ante situaciones como esta, no se actúa con la premura que requiere su consecución.

Por estas razones, disiento respetuosamente del proceder mayoritario de este Tribunal.

El Juez Asociado señor Estrella Martínez hace constar que certificaría el recurso ante nos por tratarse de una controversia de alto interés público que requiere nuestra intervención oportuna e inmediata para impartirle la certeza que amerita.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MARÍA E. QUIÑONES RIVERA, por sí y en protección de los intereses de los menores E.O.M., A.D.O.M. Y A.O.M; DENISSE JIMÉNEZ HERNÁNDEZ, por sí y en protección de los intereses de los menores D.R.J. Y D.R.J.; JADIRA JIMÉNEZ HERNÁNDEZ, por sí en protección de los intereses de los menores E.B.J. Y E.B.J.; ROSEMARY JIMÉNEZ HERNÁNDEZ, por sí y en protección de los intereses de la menor J.S.J.; JACQUELINE JIMÉNEZ HERNÁNDEZ, por sí y en protección de los intereses de los menores G.G.J., G.G.J. E LG.J.; JENIFFER FIGUEROA ROSADO, por sí y en representación de los intereses de los menores A.G.L.F., D.G.L.F.; C.J.M.C. también conocida como KAROLINA MUÑOZ CRUZ; COMITÉ TIMÓN DE FAMILIARES DE PERSONAS CON IMPEDIMENTOS, INC., también conocida como el COMITÉ TIMÓN DEL PLEITO DE CLASE DE EDUCACION ESPECIAL; PROYECTO MATRIA, INC., CASA JUANA COLÓN, APOYO Y ORIENTACIÓN A LA MUJER, INC., ORGANIZACIÓN SOLIDARIDAD HUMANITARIA INC.; COMEDORES SOCIALES DE PUERTO RICO, INC. <br><br> Peticionarios <br><br> v. <br><br> DEPARTAMENTO DE EDUCACIÓN; ELIGIO HERNÁNDEZ PÉREZ EN SU CAPACIDAD OFICIAL COMO SECRETARIO DE EDUCACIÓN; ESTADO LIBRE ASOCIADO DE PUERTO RICO <br><br> Recurridos | CT-2020-7 | |

**Voto Particular de Conformidad emitido por el Juez Asociado señor RIVERA GARCÍA, al cual se unió el Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco.**

En San Juan, Puerto Rico, a 9 de julio de 2020.

Estoy conforme con la determinación de este Tribunal de declarar **no ha lugar** el *Auto de certificación intrajurisdiccional* que presentó la parte peticionaria. Hacer lo contrario sería intervenir en este caso, omitiendo el trámite que debe seguirse para adjudicarse esta controversia. Ahora bien, con el fin de aclarar el récord, me veo precisado a emitir unos pronunciamientos en donde consigne las razones para respaldar el curso decisorio adoptado en este momento por una mayoría de los miembros de este Tribunal.

Como es sabido, hay varios factores que debemos considerar al decidir si procede expedir una certificación intrajurisdiccional. Entre estos criterios se encuentra la etapa en que se encuentra el caso y la urgencia de la controversia. Precisamente, ante decisiones que presuntamente sean urgentes, este factor se puede frustrar con la intervención a destiempo por parte de este Tribunal en casos que estaban en etapas sumamente avanzadas en otro foro. Este es el escenario que presenta este caso, por lo que lo apropiado es denegar la solicitud de certificación intrajurisdiccional, según adelanté hace más de una semana.

Con ello en mente, estoy convencido de que el Tribunal de Apelaciones debe adjudicar los méritos de la controversia antes de que decidamos si, en efecto, se trata de un caso que amerita nuestra intervención. Asimismo, considero que el hecho de que este Tribunal le solicitara al Estado expresarse sobre este asunto y no denegara hace varios días la solicitud de certificación intrajurisdiccional constituyó un retraso suficiente e injustificado en la resolución de la controversia. Por lo tanto, debo reafirmar mi posición en que no debemos demorar aún más la adjudicación de un recurso que ya **estaba perfeccionado y pendiente de adjudicación** ante el Tribunal de Apelaciones.

A continuación, presento un resumen de los hechos pertinentes que motivan mi posición sobre la solicitud de certificación intrajurisdiccional.

## I

El 22 de mayo de 2020, el Tribunal de Primera Instancia emitió una Sentencia en la que concluyó que el Departamento de Educación y el Gobierno de Puerto Rico tenían el deber ministerial de abrir los comedores escolares, no solamente para los estudiantes participantes del sistema de educación pública, sino para toda la población.

Inconforme, el **28 de mayo de 2020** el Departamento de Educación recurrió ante el Tribunal de Apelaciones

mediante un recurso de apelación con el fin de que se revocara el dictamen del foro primario. Acompañó a su recurso una *Moción urgente en auxilio de jurisdicción.* Así las cosas, el foro apelativo intermedio declaró no ha lugar la solicitud de paralización y concedió un término a la parte peticionaria para que compareciera y se expresara sobre el recurso presentado en o antes del **23 de junio de 2020.**

**Tras una prórroga solicitada por la propia parte peticionaria**, el Tribunal de Apelaciones le concedió hasta el 29 de junio de 2020 para presentar su alegato.[1] Además, el foro apelativo intermedio aclaró que no podía continuarse ningún trámite en el Tribunal de Primera Instancia.

---

[1] El Tribunal de Apelaciones consignó lo siguiente: "El término para que la parte apelada compareciera vencía hoy. Sin embargo, la parte apelada no presentó su escrito. En su lugar, solicitó más tiempo para comparecer, responsabilizando a 'las dificultades que implican las limitaciones derivadas del periodo de emergencia' y el estado de salud del licenciado Osvaldo Burgos.

Las mismas limitaciones no han sido argumentadas con respecto a una vista de desacato contra el Estado a celebrarse mañana. Al respecto, han presentado una *Oposición a Segunda Moción Urgente en Auxilio de Jurisdicción* argumentando que la vista tiene que llevarse a cabo mañana porque 'la paralización de la *Sentencia* del 23 de mayo de 2020 implicará que el pueblo en estado de necesidad se mantenga pasando hambre […]'.

Varias aclaraciones son necesarias. En primer lugar, la solicitud de prórroga de los apelantes es tardía e inmeritoria. La Regla 72(B) de nuestro Reglamento es clara. 4 LPRA Ap. XXII-B, R. 72(B). De otra parte, el licenciado Burgos no es el único abogado de récord en este caso. Las limitaciones que impone el COVID 19 las compartimos todos. Dada la gravedad de los planteamientos de los apelados, se les concede hasta el próximo lunes, 29 de junio de 2020 para presentar su escrito". *Apéndice del Auto de certificación intrajurisdiccional,* págs. 720-721.

El **29 de junio de 2020** la parte peticionaria presentó finalmente su alegato ante el foro apelativo intermedio.

No obstante, el 30 de junio de 2020 ——**treinta y dos días** después de instarse el recurso de apelación y **luego de culminar el plazo** que por segunda ocasión otorgó el foro apelativo intermedio para que la parte peticionaria se expresara sobre la apelación y el recurso quedara perfeccionado—— la parte peticionaria presentó ante este Tribunal una solicitud de *Auto de certificación intrajurisdiccional* y una *Moción de orden provisional en auxilio de jurisdicción*.

Inmediatamente, luego de examinar el trámite que se había seguido en el caso de autos, así como un estudio minucioso de ambos escritos, expresé mi parecer en cuanto a que lo apropiado era permitir que el caso siguiera su curso y esperáramos hasta que el Tribunal de Apelaciones adjudicara el recurso ante su consideración. Resalté que resultaba innecesario solicitarle a la Oficina del Procurador General a que se expresara sobre un asunto que podía ser decidido por este Tribunal en ese momento al denegar la certificación intrajurisdiccional.

No obstante, una mayoría de los miembros de este Tribunal decidió ordenarle al Estado a que se expresara sobre la solicitud de la parte peticionaria. Para ello se emitió una Resolución el 2 de julio de 2020.

El 6 de julio de 2020, la Oficina del Procurador General compareció para exponer los aspectos procesales que surgían del expediente y los escritos de la parte peticionaria. Este trámite, precisamente, debió llevar a este Tribunal, desde un inicio, a declarar no ha lugar la solicitud que se instó el 30 de junio de 2020.

Asimismo, la Oficina del Procurador General compareció el 7 de julio de 2020 para informarnos de varias resoluciones emitidas por el Tribunal de Apelaciones. Específicamente, según surge de una resolución con fecha de 6 de julio de 2020, el foro apelativo intermedio reiteró su determinación de que los procesos se paralizaran en el foro primario.[2] Además, reconoció el impedimento que ocasionaba que hubiera una solicitud de certificación intrajurisdiccional ante este Tribunal respecto a la facultad de emitir la sentencia en el caso; un recurso que se había presentado hace más de un mes ante ese foro y se había perfeccionado. Asimismo, al día siguiente emitió otra resolución mediante la cual dejó sin efecto su determinación de proveer no ha lugar a una moción de reconsideración que había presentado la parte peticionaria, la cual estaba relacionada con la

---

[2] La parte peticionaria también presentó copia de esta resolución junto con una *Moción suplementando solicitud de auxilio de jurisdicción*.

paralización de los procesos en el foro primario.[3] En su lugar, el Tribunal de Apelaciones le ordenó a la Oficina del Procurador General a que mostrara causa por la cual no debía dejar sin efecto la orden de paralización.[4]

Con ese cuadro fáctico, hoy es menester reiterar mi posición ante la desatinada actitud de varios miembros de este Tribunal de insistir en expedir el recurso de certificación intrajurisdiccional, con la consecuencia de que demorarían aún más la adjudicación en los méritos de una controversia que está pendiente y perfeccionada en el Tribunal de Apelaciones. Esto es, un caso en el cual se completó el trámite necesario para que el foro apelativo intermedio resuelva las controversias entre las partes sin demoras mayores. Me explico.

## II

Nuestro ordenamiento jurídico le concede jurisdicción a este Tribunal para, a través de un auto de certificación intrajurisdiccional, intervenir en casos pendientes ante los tribunales de inferior jerarquía en aquellas instancias en que exista "un conflicto entre decisiones previas del Tribunal de Apelaciones, se planteen cuestiones noveles de derecho, o se planteen cuestiones

---

[3] La parte peticionaria también presentó copia de esta resolución junto con una *Segunda moción suplementando solicitud de auxilio de jurisdicción.*

[4] El Tribunal de Apelaciones le concedió al Estado hasta el 9 de julio de 2020, luego de reiterar que no podía emitir la sentencia en el caso por impedimento reglamentario.

de alto interés público que incluyan cualquier cuestión constitucional sustancial al amparo de la Constitución del Estado Libre Asociado de Puerto Rico o de la Constitución de Estados Unidos". Art. 3.002 de la *Ley de la Judicatura de Puerto Rico*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24s(e). Véase, además, la Regla 23 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI (que regula la manera en que ha de utilizarse este poder jurisdiccional y los límites que le impone a los foros inferiores mientras está pendiente una solicitud de certificación intrajurisdiccional ante este Tribunal).

La certificación intrajurisdiccional es un recurso discrecional del Tribunal que solo procede utilizarse en casos realmente meritorios donde no es aconsejable ni necesario esperar que los foros inferiores adjudiquen las controversias de un caso. Precisamente, conforme ha expresado este Tribunal, la certificación intrajurisdiccional es un recurso de **carácter excepcional**. *UPR v. Laborde Torres*, 180 DPR 253, 272 (2010); *Torres Maldonado v. Gobernador ELA*, 194 DPR 760, 783 (2016) (Opinión de conformidad de la Juez Asociada señora Rodríguez Rodríguez). A esos efectos, hemos reconocido que **"la norma preferida en nuestro ordenamiento es que los casos maduren durante el trámite ordinario para evitar así que el foro de última instancia se inmiscuya a destiempo"**. (Énfasis suplido). Íd. Así pues, debido al carácter

discrecional y excepcional de los recursos de certificación intrajurisdiccional, debemos auscultar rigurosamente los criterios siguientes: "(1) la urgencia, (2) **la etapa en que se encuentran los procedimientos**, (3) la necesidad que puede presentarse de recibir prueba y (4) la complejidad de la controversia". (Énfasis suplido). *Rivera Schatz v. ELA y C. Abo. PR II*, 191 DPR 791, 849 (2014). Por su carácter excepcional, en la medida que estos factores no aconsejen la expedición del recurso, debe denegarse.

### III

Desde un inicio anticipé los efectos de concederle un plazo a la Oficina del Procurador General en un asunto que podía denegarse desde un inicio, de forma que se permitiera que el Tribunal de Apelaciones adjudicara, de una vez y por todas, la controversia que se encontraba ante su consideración. En aquel momento una mayoría de los miembros de este Tribunal falló al ignorar las disposiciones de nuestro Reglamento, las cuales impiden, aun cuando el foro apelativo hubiera tenido preparada la sentencia, que el asunto sea decidido finalmente. Ello, provocando el prolongado proceso que proponían algunos compañeros y compañeras para resolver lo que ya el foro apelativo intermedio está en posición de adjudicar.

La evaluación de la etapa del proceso en que se encuentra el caso debió llevarnos a colegir que lo ideal,

lo propicio y lo conveniente era que el Tribunal de Apelaciones emitiera la sentencia para adjudicar el recurso ante su consideración. Como vimos, el recurso de apelación en el Tribunal de Apelaciones estaba perfeccionado al momento de presentarse la solicitud de certificación intrajurisdiccional. Asimismo, ambas partes habían comparecido ante el tribunal y el asunto llevaba más de un mes ante el foro apelativo intermedio. Así pues, a veces la certeza, la rápida y la agilidad del proceso se logra permitiendo que los casos sigan su curso sin impedir que los tribunales inferiores puedan emitir sus dictámenes.

En el caso de autos, el Tribunal de Apelaciones, en efecto, emitió una resolución mediante la cual puso de manifiesto las consecuencias de la decisión desacertada de ordenarle al Estado a que compareciera ante este Tribunal con el fin de expresarse sobre la solicitud de certificación intrajurisdiccional que presentó la parte peticionaria y, por lo tanto, que permaneciera pendiente esta solicitud ante este Tribunal. En específico, el foro apelativo intermedio expresó lo siguiente:

> En este punto, el caso **está perfeccionado**. Sin embargo, hemos sido notificados de que la parte demandante apelada ha optado por presentar ante el Tribunal Supremo de Puerto Rico un recurso de certificación dirigido a remover el caso del Tribunal de Apelaciones. La presentación de dicho recurso por parte de los demandantes apelados le **impide a este Foro emitir sentencia**. Al respecto, la Regla 23 del Reglamento del Tribunal Supremo, 4 LPRA Ap.

XXI-B, R. 23, mandata que una vez se presenta una petición de certificación como la que ha presentado la parte demandante apelada, este Tribunal "no podrá dictar sentencia en el caso a menos que el Tribunal Supremo deniegue la expedición del auto de certificación". **Procede en este punto esperar la determinación del más Alto Foro.** (Énfasis y subrayado suplido). *Moción Informativa*, Anejo I (*Resolución* de 6 de julio de 2020)*,* págs. 5-6.[5]

Si algo se puede inferir de estas expresiones del Tribunal de Apelaciones, es que este estaba preparado para emitir su dictamen para adjudicar el recurso de apelación. Sin embargo, la determinación de este Tribunal de no denegar el recurso desde un inicio lo llevó a aguardar por una determinación posterior de este Tribunal. Véase, *Moción Informativa,* Anejo II (*Resolución* de 6 de julio de 2020), pág. 10. Cabe recordar que la Regla 23(b)(2) del nuestro Reglamento, 4 LPRA Ap. XXI-B, instituye que:

> La presentación de una solicitud de certificación intrajurisdiccional no interrumpirá los procedimientos ante el tribunal en que se encuentre el caso a ser certificado, pero este **no podrá dictar sentencia en el caso a menos que el Tribunal Supremo deniegue la expedición del auto de certificación.** De expedirse el auto de certificación, el caso pasará en su totalidad a la atención del Tribunal Supremo. (Énfasis y subrayado suplido).

En ese sentido, más que agilizar los procesos, el trámite que intentaron forzar varios compañeros y

---

[5] Aunque existe una resolución del Tribunal de Apelaciones del 7 de julio de 2020 que dejó sin efecto la resolución, esta determinación estuvo enfocada en aspectos relacionados a la paralización o no de los procesos en el foro primario. Véase *Moción Informativa,* Anejo III, pág. 14. De hecho, el foro apelativo intermedio reiteró la norma contenida en la Regla 23. Íd., esc. 2.

compañeras de este Tribunal contribuyó a ocasionar demoras innecesarias en la resolución de esta controversia. Es decir, estos han sido el factor determinante al aplazamiento innecesario de un caso que podía culminar en el foro apelativo intermedio y en el cual ya podía existir una sentencia dándole finalidad a la controversia.

Ante el trámite procesal del caso ⸻especialmente el hecho de que el caso llevaba más de un mes ante el Tribunal de Apelaciones y se había perfeccionado antes de que se presentara la solicitud de certificación intrajurisdiccional⸻ la única motivación de los compañeros y compañeras que disienten es que estos presuman que el foro apelativo intermedio resolverá el caso erróneamente. Es que ni siquiera pueden adjudicarle una tardanza irrazonable al Tribunal de Apelaciones. La solicitud de certificación intrajurisdiccional se presentó inmediatamente luego de que el recurso de apelación se perfeccionó, por lo que el foro apelativo intermedio no ha tenido la oportunidad de emitir la sentencia.

Ahora bien, incluso bajo la premisa errada de que el foro apelativo intermedio resolverá incorrectamente, no podemos perder de perspectiva que este Tribunal tiene la oportunidad de intervenir en su momento, de ser necesario. En ese instante, de exigirlo las circunstancias, estaremos en posición de tomar las medidas necesarias para salvaguardar los intereses de las partes.

Reitero que el caso se había presentado en el foro apelativo intermedio más de un mes antes de que se solicitara la certificación en controversia. Además, el recurso de apelación se había perfeccionado en el referido foro el día antes de esta solicitud. De hecho, este se hubiera perfeccionado antes si no hubiera sido por la propia solicitud de prórroga que presentó la parte peticionaria ante el foro apelativo intermedio.

**El Tribunal de Apelaciones está en posición para emitir su sentencia.** Con la determinación que emitimos hoy se le devuelve esta oportunidad y acabamos con el impedimento que mantuvimos por más de una semana.

Empero, parece ser que existe un interés sustancial e injustificado de varios de los compañeros y compañeras que disienten de pautar una norma, aun cuando el caso, y especialmente el dictamen del foro apelativo, puede evitar nuestra intervención en este asunto. De hecho, con nuestra determinación evitamos la postergación infundada de un asunto que pudo haber sido adjudicado por el Tribunal de Apelaciones. Como dije, conforme surge de la porción de la resolución que transcribimos previamente, seguramente las partes en este momento hubieran tenido una sentencia del foro apelativo intermedio adjudicando las controversias del caso de autos.

Así las cosas, lo apropiado es que el caso prosiga su trámite en el Tribunal de Apelaciones. Por lo tanto,

no me queda más que reafirmar que lo que procede es declarar **no ha lugar** el *Auto de certificación intrajurisdiccional* que presentó la parte peticionaria. Reafirmo que así lo debimos hacer desde un inicio.

**IV**

Como consecuencia, estoy conforme con la resolución que emite este Tribunal.

Edgardo Rivera García
Juez Asociad

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María E. Quiñones Rivera, et. al.

    Peticionarios

           v.

Departamento de Educación; Eligio Hernández Pérez, en su capacidad oficial como Secretario de Educación; ELA

    Recurridos

CT-2020-0007  Certificación Intrajurisdiccional

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ al que se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 9 de julio de 2020.

> "El hambre no es un fenómeno natural. Es una tragedia creada por los seres humanos. La gente no pasa hambre porque no haya suficiente comida, sino porque el sistema que reparte la comida desde los campos a nuestra mesa no funciona". (Traducción suplida).
>
> Desmond Tutu, Premio Nobel de la Paz (1984).

Cuando la insensibilidad e incompetencia del aparato gubernamental que rige los destinos de un Pueblo alcanza niveles insospechados -- trastocando con ello los derechos constitucionales más básicos que le asisten a los ciudadanos y ciudadanas que aquí habitan --, y aquellos y aquellas que están llamados a hacer valer los mismos optan por guardar silencio, disentir es una obligación. Dicha tarea la

emprendemos con mayor entrega cuando lo que se pretende postergar es el acceso de nuestros ciudadanos y ciudadanas a una alimentación adecuada, vulnerando así los más elementales principios constitucionales del derecho a la vida, según consagrados en el Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico, *infra*. Veamos.

## I.

El 28 de abril de 2020, la señora María E. Quiñones Rivera y otros (en adelante "señora Quiñones Rivera") presentaron, ante el Tribunal de Primera Instancia, un recurso de *Mandamus, interdicto provisional, injunction preliminar y permanente*, en el cual solicitaron que se obligara al Departamento de Educación de Puerto Rico a proveer alimentos a toda la población que se ha visto privada de los mismos. Esto, como resultado de las medidas aprobadas para atender la emergencia provocada por el COVID-19.

Tras varios trámites procesales no necesarios aquí pormenorizar, el 22 de mayo de 2020 el Tribunal de Primera Instancia dictó *Sentencia*, declarando no ha lugar cierta *Moción en solicitud de desestimación* presentada por el Departamento de Educación. Asimismo, el foro primario expidió el auto de *mandamus* solicitado, ordenando a la referida agencia gubernamental y al Estado Libre Asociado de Puerto Rico a que, inmediatamente, abrieran todos los comedores escolares que fuesen necesarios para alimentar a

toda la población necesitada, mientras durase el actual estado de emergencia provocado por el COVID-19.

En desacuerdo con dicha determinación, el 28 de mayo de 2020 el Departamento de Educación presentó un recurso de apelación ante el Tribunal de Apelaciones, junto a una *Moción urgente en auxilio de jurisdicción*, solicitando la paralización de los efectos de la *Sentencia*. Oportunamente, la señora Quinoñes Rivera se opuso a dicho recurso. Evaluados los argumentos de las partes, el foro apelativo intermedio denegó la moción de auxilio presentada por el Departamento de Educación.

Así las cosas, el 9 de junio de 2020 la señora Quiñones Rivera presentó una *Moción de desacato* ante el Tribunal de Primera Instancia, toda vez que el Departamento de Educación no había cumplido con lo ordenado en la *Sentencia* emitida por el foro primario. Ante esta solicitud, y luego de examinar la comparecencia de este último, el Tribunal de Primera Instancia señaló una vista sobre desacato para el 24 de junio de 2020.

Inconforme con dicho proceder, el 22 de junio de 2020 el Departamento de Educación presentó una segunda *Moción urgente en auxilio de jurisdicción* ante el foro apelativo intermedio, en la cual solicitó la paralización de la vista sobre desacato. La señora Quiñones Rivera se opuso oportunamente, argumentando que la referida solicitud no cumplía con los requisitos establecidos para que se concediera el remedio solicitado y que dicho mecanismo no

podía utilizarse para evadir las consecuencias del incumplimiento con la *Sentencia* emitida por el foro primario hasta ese momento en vigor.

No obstante, el Tribunal de Apelaciones dejó sin efecto la vista de desacato, así como cualquier otro procedimiento ante el Tribunal de Primera Instancia, hasta que otra cosa se dispusiera. En respuesta, el 26 de junio de 2020 la señora Quiñones Rivera presentó una *Moción de reconsideración* ante el foro apelativo intermedio y el 29 de junio de 2020 presentó un *Alegato en oposición a la apelación*.

Ahora bien, dada la urgencia de los asuntos en cuestión, el pasado 30 de junio de 2020 la señora Quiñones Rivera acudió ante nos y presentó el recurso de certificación intrajurisdiccional que hoy nos ocupa, donde en esencia nos solicita que -- en la causa de epígrafe -- se reinstale el dictamen emitido por el Tribunal de Primera Instancia. Recibido el recurso, el 2 de julio de 2020 le concedimos al Departamento de Educación hasta el 6 de julio a las once de la mañana (11:00 a.m.) para que compareciera ante este Tribunal y se expresara sobre la *Solicitud de certificación intrajurisdiccional* y la *Moción de orden provisional en auxilio de jurisdicción* presentada por la señora Quiñones Rivera y los demás peticionarios.

Oportunamente, el Departamento de Educación compareció ante nos. En síntesis, la referida dependencia gubernamental sostiene que nada en el ordenamiento legal

vigente le impone la obligación de proveer alimentos a los menores de edad o a la población en general; sino que las leyes y reglamentos vigentes que gobiernan estos asuntos admiten potestad discrecional sobre qué acciones tomar al tratar los mismos. Aduce también que, conforme a eso, el Secretario de Educación ha ordenado la apertura de algunos comedores escolares -- en esencia, uno (1) por Municipio -- para proveer alimentos a la población.[6]

Así pues, con el beneficio de la comparecencia de ambas partes, procedemos a disponer, en la manera que consideramos correcta, de las controversias que hoy nos ocupan.

II.

Como se sabe, el Art. 3.002 (f) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24s, dispone que este Tribunal:

> Mediante auto de certificación, a ser expedido discrecionalmente, motu proprio o a solicitud de parte, podrá traer inmediatamente ante sí para considerar y resolver cualquier asunto pendiente ante el Tribunal de Primera Instancia cuando se plantee la existencia de un conflicto entre decisiones previas del Tribunal de Apelaciones, se planteen cuestiones noveles de derecho, o **se planteen cuestiones de alto interés público que incluyan cualquier cuestión constitucional sustancial al amparo de la Constitución de Puerto Rico o de la Constitución de Estados Unidos.** (Énfasis suplido).

---

[6] *Política Pública sobre los servicios de apertura de los comedores escolares con el propósito de preparar alimentos durante la emergencia por el COVID-19.*

Dicho recurso es de carácter excepcional, pues nuestro ordenamiento favorece la norma de permitir que los casos maduren a través del trámite ordinario, para evitar que el foro de última instancia intervenga en los mismos a destiempo. *Alvarado Pacheco y otros v. E.L.A.*, 188 DPR 594 (2013); *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253 (2010); *Rivera v. J.C.A.*, 164 DPR 1 (2005).

No obstante, al interpretar la precitada disposición legal, esta Curia ha resuelto que **el auto de certificación intrajurisdiccional es el mecanismo adecuado para atender asuntos que requieren solución urgente, ya sea porque se afecta la administración de la justicia o porque el asunto es de tal importancia que exige una pronta atención**. *Alvarado Pacheco y otros v. E.L.A.*, *supra*; *U.P.R. v. Laborde Torres y otros I*, *supra*; *Presidente de la Cámara v. Gobernador*, 167 DPR 149, (2006); *Rivera v. J.C.A.*, *supra*[7]. Este Foro ha expresado, además, que el recurso de certificación nos permite dilucidar casos que de otra forma evadirían nuestros pronunciamientos. *Alvarado Pacheco y otros v. E.L.A.*, *supra*; *U.P.R. v. Laborde Torres y otros I*, *supra*; *Presidente de la Cámara v. Gobernador*, *supra*.

---

[7] Resulta inaudito que el hambre de miles de niños puertorriqueños no esté revestida del mismo interés público que otros asuntos para los que una mayoría de este Tribunal sí ha optado por intervenir mediante el recurso de certificación. Todo parece indicar que una necesidad tan básica de un sector de la población en extremo vulnerable e indefenso tiene menos valor que el acceso a las gradas, el derecho de los estudiantes a manifestarse o el despido masivo de empleados públicos.

III.

De otra parte, y por ser en extremo pertinente para la correcta disposición de las controversias ante nuestra consideración, es menester recordar que la Constitución del Estado Libre Asociado de Puerto Rico **"reconoce como derecho fundamental del ser humano el derecho a la vida"**. Const. P.R. Art. II, Sec. 7, LPRA, Tomo 1. En múltiples ocasiones, este Tribunal ha reconocido que el derecho a reclamar alimentos es uno de profundas raíces constitucionales como parte del derecho a la vida. *Umpierre Matos v. Juelle Abello*, 2019 TSPR 160, 203 DPR ___ (2019*); Díaz Ramos v. Matta Irizarry*, 198 DPR 916 (2017); *Franco Resto v. Rivera Aponte*, 187 DPR 137, 153 (2012); *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728 (2009); *McConnell v. Palau*, 161 DPR 734 (2004). Además, nuestra jurisprudencia ha reiterado que el "deber de alimentar se funda en principios universalmente reconocidos de solidaridad humana, guardados por el derecho natural a la vida e imperativos de los vínculos familiares". *Rodríguez Pagán v. Depto. Servicios Sociales*, 132 DPR 617, 630 (1993); *Martínez v. Rivera Martínez*, 116 DPR 164 (1985); *Milán v. Muñoz*, 110 DPR 610 (1981).

Si bien este reconocimiento se ha dado en el contexto de las relaciones familiares, lo cierto es que el derecho a la alimentación proviene de principios universales que trascienden las fronteras del hogar. Son éstos los

principios que recogió el tratadista español José Manresa

al expresar que:

> El ser humano, que viene a la vida con el destino
> que le señale su propia naturaleza, tiene un
> derecho a la existencia y al desarrollo de la
> misma según sus facultades; es decir, tiene un
> derecho absoluto a su conservación. En la
> organización actual de la familia y de la sociedad
> se halla impuesta, **primero a los parientes y
> después al Estado**, la obligación de proveer dicha
> necesidad; y cada uno en su caso está en el deber
> de procurar al que por si no podría cumplir dicho
> fin, los medios necesarios para su conservación
> y desarrollo: deber altamente social, que no
> depende de la voluntad del que le tiene, sino que
> se impone a todos como una de las condiciones
> necesarias de la vida progresiva de la humanidad.
> (Énfasis suplido) J. M. Manresa y Navarro,
> *Comentarios al Código Civil Español*, Madrid, Ed.
> Reus S.A., 1956, Vol. I, págs. 782-783.

De lo anterior podemos colegir que la alimentación, como

parte fundamental del derecho a la conservación humana, es

de tan vital importancia que la responsabilidad de proveerla

no termina en el vínculo familiar. Es decir, existe un

entendido de que, cuando los parientes no pueden cumplir

con este deber, corresponde al Estado satisfacer dicha

necesidad.

Establecido lo anterior, cabe señalar que el derecho a

la alimentación también se encontraba consagrado en la Sec.

20 del Art. II de nuestra Carta Magna, según fue propuesta

originalmente. La referida sección reconocía una serie de

derechos humanos, entre los cuales se encontraba "[e]l

derecho de toda persona a disfrutar de un nivel de vida

adecuado que asegure para sí y para su familia la salud, el

bienestar y especialmente la alimentación, el vestido, la

vivienda, la asistencia médica y los servicios sociales necesarios". Const. P.R., Art. II, Sec. 20, LPRA, Tomo 1.

A pesar de que la precitada Sec. 20 fue rechazada por el Congreso de los Estados Unidos mediante Resolución Conjunta del 3 de julio de 1952, su espíritu late entre aquellos derechos que, aunque no se mencionan en el texto de nuestra Constitución, el pueblo se reserva frente al poder político creado, *Amy v. Adm. Deporte Hípico*, 116 DPR 414 (1985) y, por más de medio siglo, ha servido "como fuente de inspiración para ampliar y dar sustancia a otras disposiciones de la Carta de Derechos, como la Sección 7, que consigna el derecho a la vida, y la prohibición del discrimen por razón de condición social, contenida en la Sección 1". E. Vicente Rivera, *Una mirada a la interpretación de los derechos económicos, sociales y culturales en las decisiones del Tribunal Supremo de Puerto Rico*, 44 Rev. Jur. UIPR 17, 23-24 (2010).

Al igual que el resto de nuestra Carta de Derechos, la Sec. 20 tuvo su origen en la Declaración Universal de los Derechos Humanos. Vicente Rivera, *supra*, págs. 20-21. Sin embargo, el reconocimiento del derecho a la alimentación como corolario del derecho a la vida fue reiterado en el Art. 11 del Pacto Internacional de Derechos Económicos, Sociales y Culturales, aprobado por la Organización de las Naciones Unidas en el año 1966.[8]

---

[8] En específico, el referido artículo dispone lo siguiente:

Aunque en el referido Art. 11 se establece el derecho a la alimentación de forma general y su texto es muy similar al que se encuentra en la Sec. 20 de nuestra Carta de Derechos, podemos hallar una explicación más extensa de lo que constituye dicho derecho en las Observaciones Generales emitidas por el Consejo Económico y Social de la Organización de las Naciones Unidas (ECOSOC). En particular, el inciso 6 de la Observación General 12 establece que:

> El derecho a la alimentación adecuada se ejerce cuando todo hombre, mujer o niño, ya sea sólo o en común con otros, tiene acceso físico y económico, en todo momento, a la alimentación adecuada o a medios para obtenerla. El derecho a la alimentación adecuada no debe interpretarse, por consiguiente, en forma estrecha o restrictiva asimilándolo a un conjunto de calorías, proteínas y otros elementos nutritivos concretos. El derecho a la alimentación adecuada tendrá que alcanzarse

---

1. Los Estados Partes en el presente Pacto reconocen el derecho de toda persona a un nivel de vida adecuado para sí y su familia, incluso alimentación, vestido y vivienda adecuados, y a una mejora continua de las condiciones de existencia. Los Estados Partes tomarán medidas apropiadas para asegurar la efectividad de este derecho, reconociendo a este efecto la importancia esencial de la cooperación internacional fundada en el libre consentimiento.

2. Los Estados Partes en el presente Pacto, reconociendo el derecho fundamental de toda persona a estar protegida contra el hambre, adoptarán, individualmente y mediante la cooperación internacional, las medidas, incluidos los programas concretos, que se necesitan para:

a) Mejorar los métodos de producción, conservación y distribución de alimentos mediante la plena utilización de los conocimientos técnicos y científicos, la divulgación de principios sobre nutrición y el perfeccionamiento o la reforma de los regímenes agrarios de modo que se logren la explotación y la utilización más eficaces de las riquezas naturales;

b) Asegurar una distribución equitativa de los alimentos mundiales en relación con las necesidades, teniendo en cuenta los problemas que se plantean tanto a los países que importan productos alimenticios como a los que los exportan. Art. 11, Pacto Internacional de Derechos Económicos, Sociales y Culturales (https://www.ohchr.org/SP/ProfessionalInterest/Pages/CESCR.aspx)

progresivamente. **No obstante, los Estados tienen la obligación básica de adoptar las medidas necesarias para mitigar y aliviar el hambre tal como se dispone en el párrafo 2 del artículo 11, incluso en caso de desastre natural o de otra índole.** (Énfasis suplido) Observación general 12, El derecho a una alimentación adecuada (art. 11)(https://www.acnur.org/fileadmin/Documento s/BDL/2001/1450.pdf).

Como se puede apreciar, el derecho a la alimentación no sólo se trata de una aspiración en el vacío, sino de un compromiso continuo de garantizar el acceso físico y económico de todo ser humano a una alimentación adecuada. Ello, a su vez, impone al Estado el deber de tomar las medidas necesarias para hacer posible ese acceso a personas que por diversas circunstancias se ven privadas del mismo. Dicho deber permanece incluso -- o, más bien, especialmente -- en situaciones de emergencia como la que atraviesa nuestro País en estos momentos.

IV.

Establecido lo anterior, y cónsono con lo antes mencionado, conviene recordar aquí que la Ley Núm. 85-2018, mejor conocida como la Ley de Reforma Educativa de Puerto Rico, impone al Secretario de Educación el deber de establecer la política pública del Departamento que este dirige "de modo que reflejen que el estudiante es la razón de ser del Sistema de Educación y que cumpla con los propósitos de la Constitución de Puerto Rico, este capítulo y de las leyes y política pública adoptadas por el Gobierno

de Puerto Rico". 3 LPRA sec. 9802c. Entre varias exigencias, la referida disposición legal le requiere al mencionado funcionario "[h]acer disponibles los **servicios de comedor** y transportación escolar" que provee el Departamento de Educación a su matrícula. *Íd*. Dicho de otro modo, el Secretario de Educación tiene la obligación de proveer alimentos a la población a la cual sirve.

Tal obligación se hizo extensiva a todo un país, a raíz de las lecciones aprendidas tras el paso del huracán María en septiembre de 2017, evento que unió el gobierno, la empresa privada y las organizaciones no gubernamentales en un esfuerzo coordinado para atender situaciones de emergencia producidas por desastres naturales, como lo es la pandemia del COVID-19 que hoy vivimos. Véase, *Joint Operational Catastrophic Incident Plan of Puerto Rico*.

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía que este Tribunal dispusiese de las controversias ante nuestra consideración. Como una mayoría de este Tribunal no lo hizo, procedemos -- desde la disidencia -- a así hacerlo.

V.

En el presente caso, un grupo de ciudadanos acude a las puertas de este Tribunal reclamando un derecho que es fundamental en nuestro ordenamiento constitucional, pues se

trata de un elemento central del derecho a la vida: **el acceso a una alimentación adecuada.**

Primeramente, precisa señalar que, contrario al sentir de una mayoría de esta Curia, entendemos que el presente recurso, a todas luces, cumple con los requisitos para ser traído ante nuestra consideración mediante el auto de certificación intrajurisdiccional. Sin lugar a dudas, la alimentación de los sectores más vulnerables de nuestra Isla, en el contexto de la crisis de salud que vivimos, está revestida del más alto interés público y es una que, cada día que pasa, continua agravándose, mientras el Estado -- insensible e incompetentemente -- permite que se echen a perder miles de libras de alimentos que custodia y que se obtienen mediante el uso de fondos públicos.[9] En ese sentido, urgía proveer certeza a los asuntos traídos ante nuestra consideración.

Ahora bien, más allá de resolver la procedencia o no de un recurso extraordinario ante nos, el presente caso nos invita a reflexionar sobre el deber constitucional que tiene el Estado Libre Asociado de Puerto Rico de velar por las necesidades básicas de sus constituyentes en un momento tan histórico, y tan crítico, como el que hoy enfrentamos.

---

[9] Véanse *Botan cientos de cajas de comida en almacén del Departamento de Educación*, Metro Puerto Rico (24 de junio de 2020), https://www.metro.pr/pr/noticias/2020/06/24/botan-cientos-de-cajas-de-comida-en-almacen-del-departamento-de-educacion.html; *Alimentos en almacén de Educación se dañaron durante el 'lockdown'*, El Vocero de Puerto Rico (24 de junio de 2020), https://www.elvocero.com/educacion/alimentos-en-almac-n-de-educaci-n-se-da-aron-durante-el-lockdown/article_e2b7307e-b655-11ea-a8bb-53d862214ed2.html.

Y es que, como es sabido, a causa de las medidas tomadas para atajar la pandemia del COVID-19, la situación económica de muchos hogares y la disponibilidad de alimentos se ha visto en extremo afectada, impidiendo el acceso de miles de puertorriqueños de distintas edades y circunstancias a su pan de cada día. Por su parte, el Departamento de Educación cerró las operaciones de la mayoría de los comedores escolares a partir del 16 de marzo de 2020, -- limitándose a abrir un (1) solo comedor escolar por pueblo, lo cual, al parecer, fue determinado mediante el empleo de una fórmula automática carente de datos poblacionales y de necesidad que lo validen --, viéndose obligado a almacenar comestibles que, de no utilizarse, eventualmente tendrían que ser descartados.

Es, precisamente, en instancias como ésta que debe aflorar con mayor ímpetu nuestro más alto sentido de justicia y lo que el profesor Pietro Perlingieri denomina la solidaridad constitucional. Es decir, aquella que procura la igual dignidad social y "otorga a cada uno el derecho al respeto inherente a la cualidad de [ser humano] y además la pretensión de ser puesto en las condiciones idóneas para ejercitar las mismas aptitudes personales […]". P. Perlingieri, *El derecho civil en la legalidad constitucional según el sistema italo-comunitario de las fuentes*, Ed. Dykinson, S.L., 2008, pág. 423. Si bien a todos nos toca enfrentar esta crisis como Pueblo, es también deber ineludible del Estado poner sus recursos a la

disposición de aquellos puertorriqueños para quienes los estragos de la misma han sido mayores. Puertorriqueños que no sólo han visto afectada su salud física, sino también emocional, por las repercusiones que la pandemia ha traído consigo, incluyendo la merma en sus ingresos y, por tanto, su capacidad de proveer el sustento para sí y los suyos.

Siendo ello así, nos parece inconcebible que hoy se prive al pueblo puertorriqueño de **alimentos disponibles y necesarios** para tener una vida digna, vulnerando así uno de los principios más básicos que recoge nuestra Constitución. Sólo queda recordar que al final de este día, mientras nos retiramos a nuestros aposentos para descansar, muchos puertorriqueños y puertorriqueñas procurarán conciliar el sueño, pero para ignorar el rugir de un estómago vacío.

Lo anterior cobra mayor fuerza si tomamos en consideración que alrededor de 379,818 niños y niñas estudian en las escuelas públicas de nuestro país y más de la mitad de los niños y niñas que residen en nuestra Isla (383,000) -- independientemente del sistema educativo del cual formen parte, público o privado -- viven bajo el nivel de pobreza.[10] Así las cosas, para muchos de estos niños y niñas los alimentos que reciben en los comedores escolares son su principal sustento.

---

[10] Véase, Instituto de Estadísticas, *Anuario Estadístico del Sistema Educativo Año Académico 2015-2016,* https://estadisticas.pr/en/inventario-de-estadisticas/perfil-de-escuelas-publicas-y-privadas. Véase además, Youth Development Institute of Puerto Rico, *A Future of Child Poverty in Puerto Rico: How much costs and what we can do about it* (11 de febrero de 2020), https://www.cuantonoscuesta.com.

**Nos resulta, pues, en extremo lamentable que una mayoría de este Tribunal haya permitido que pase un solo día más en el que el hambre continúe tocando las puertas de muchos hogares puertorriqueños, mientras los alimentos en manos del Estado continúan perdiéndose. Lo anterior no debe ser permitido, no al menos para el juez que suscribe. Se trata de una cuestión de humanidad. Procedía, pues, ordenar la apertura inmediata de todos los comedores escolares que -- luego de un análisis adecuado de la población que se ha visto afectada en cada municipio -- fuesen necesarios para alimentar a toda la población necesitada mientras durase el actual estado de emergencia provocado por el COVID-19. Lo anterior, claro está, a la luz de las reglamentaciones estatales y federales aplicables, y garantizando la salud y seguridad de los empleados y las empleadas que allí laboran.**

VI.

Por no ser ese el criterio mayoritario, como ya mencionamos, disentimos enérgicamente del lamentable proceder seguido por esta Curia en el día de hoy.

Ángel Colón Pérez
Juez Asociado